## D. W. FRAREY, APPELLANT, *v.* JACOB WHEELER AND JEMIMA J. WHEELER, RESPONDENTS.

REAL PROPERTY OF MARRIED WOMEN — SPECIFIC PERFORMANCE AGAINST.— A specific performance will not be decreed by a Court of equity to compel a married woman to convey her real property upon a contract or covenant executed by her and her husband for that purpose during coverture.

IDEM.—But where a married woman, during coverture, joins with her husband in a covenant to convey her real property, and the covenantee advances money to the wife on the contract, or, with her assent, enters into the possession of the premises, and makes permanent improvements thereon, the money so advanced, and the value of such improvements (less the value of the use of such premises), will be decreed to be a charge upon such land until paid. Courts in protecting the rights of married women should not go so far as to encourage the perpetration of fraud by them.

APPEAL from Multnomah County.

On the 1st day of April, 1867, the respondents, Wheeler and wife, covenanted to and with appellant, to convey to him in fee simple, with the usual covenants of warranty, certain real estate held by said Jemima J., in her own right, under the Donation Law of September 27th, 1850. The consideration of this covenant was the payment at the time by appellant of twenty dollars in gold coin and his agreement to pay, one year after date, the further sum of three hundred and eighty dollars in like money. By the terms of the covenant appellant was to have, and did take immediate possession of the described premises. He alleges that during the time he held such possession he made valu-

able and permanent improvements thereon, which greatly enhanced their value, although the use of the same yielded him no benefit. About the 1st day of August, 1870, he tendered to respondents the full balance of the purchase-price of said land, with lawful accruing interest thereon to that time, in gold coin, which they refused to receive, and refused to execute a deed to the premises.

Wherefore, appellant asks that the execution of the deed referred to be decreed, or that an accounting of the value of the improvements referred to and of the twenty dollars advanced be had and the same made a charge upon said land.

Respondents interposed a general demurrer to the complaint, which was sustained and the cause dismissed. From this order of dismissal appellant appeals.

*W. W. Thayer and Charles Gardner,* for Appellant.

The incapacity of a married woman at common law to contract did not proceed from a want of understanding or discretion, but was in consequence of the peculiar relation resulting from the marriage. She was placed under the power and protection of her husband, and deprived of the administration of property. (2 Kent's Com. 150.) Her personal property, *ipso facto,* with the marriage, went to the husband. He also became immediately seized, *jure uxoris,* of the freehold estate and entitled to the rents and profits, and, if issue were born alive, he took the estate absolutely for life as tenant by the curtesy. Her interest in everything she possessed at the time of the marriage at once became his, leaving in her only a residuary right, the enjoyment of which depended upon the contingency of survivorship. (2 Kent's Com. 130.)

"The exclusive right of using and transferring property follows as a natural consequence from the perception and admission of the right itself." (2 Kent's Com. 320.) "The power of alienation of property is a necessary incident to the right of property, and was dictated by mutual convenience and mutual wants." (Id. 326; 4 Kent's Com. 441.) In accordance with this principle, Courts of equity have

instituted the doctine of settlement, whereby property is secured to the separate use of married women, and it is now a settled rule in equity that a *feme covert*, in regard to her separate property, is considered a *feme sole*, and may by her contracts bind such separate estate. (2 Kent's Com. 164; *Jacques* v. *M. E. Church*, 17 John. 548; 20 N. Y. 247; 2 Edwards' Ch. 635.)

Whenever the entanglement of rights caused by the marriage have been avoided and the wife's property secured to her separate use, a complete right to dispose of or contract in regard to it is accorded her. (*Van Allen* v. *Humphrey & Gilbert*, 15 Barb. S. C. 556; 2 Bacon Abr. 71, title " M.;" 2 Bright. H. and W. 60.)

The Donation Act gives to the wife of a settler under certain circumstances a half section of land, "to be held by her in her own right." This right she cannot have if the land is subject to the marital rights of the husband as they existed at common law. (*Imlay* v. *Huntington*, 20 Conn. 149.) If it is her separate property, she must be deemed to have the *jus disponendi*. (*Hulme* v. *Tenant*, 1 Leading Cas. in Eq. 533; *Greenough* v. *Wiggington and Wife*, 2 Green, Iowa R. 435; *Sherman* v. *Elder*, 24 N. Y. 384; *Yale* v. *Dederer*, 18 N. Y. 271; 22 N. Y. 452.)

The Act concerning conveyances does not incapacitate a married woman from conveying her separate property. It merely provides a *mode* by which the wife shall convey her real estate, and it also provides a mode by which real property shall be conveyed generally. (Mis. Laws, ch. 6, §§ 1, 2.) Unless the formalities required by the Act are observed, the title will not pass in either instance. (*Lessee of Patterson* v. *Pease*, 5 Ohio, 190.)

Courts of equity disregard the wholesome provisions of the Statute of Frauds when one party seeks to avail himself of them to practice a fraud upon another. (*Cayon* v. *Dox*, 34 N. Y. 307.)

A married woman should not be allowed to plead her coverture where the transaction relates to her separate property is fair, and would operate unjustly if not carried

into execution. (*Graham* v. *Meek,* 1 Ogn. 325; *Fulton* v. *Moore,* 25 Penn. 468.)

Time was not the essence of the contract. (*Seton* v. *Slade,* 3 Lead. Cas. in Eq.; *Waters* v. *Travis,* 9 John. 466; *Calmes* v. *Buch,* 4 Bibb. 453: *Farley* v. *Vaughn,* 11 Cal. 227.) Respondents could not complain of delay when they had not tendered a deed. (*Beecher* v. *Conradt,* 13 N. Y. 108.)

*J. H. Reed,* for Respondents.

A husband and wife may, by their joint deed, convey the real estate of the wife in like manner as she might do by her separate deed if she were unmarried, but the wife shall not be bound by any covenant contained in the deed. (Mis. Laws, ch. 6, § 2.) The bond of a *feme covert* is void. (Bac. Ab., title, "Baron and Feme," 1.) A *feme covert* cannot bind herself by an executory contract to convey her own lands, even though the husband join with her in the obligation. (3 Green. 50.) Though a wife may convey her estate by deed, she will not be bound by a covenant or agreement to levy a fine or convey her estate. The agreement by a *feme covert,* with the assent of her husband, for the sale of her real estate, is absolutely void at law, and the Courts of equity never enforce such a contract against her. (2 Kent Com. 168.)

A party cannot compel the specific performance of a contract to convey lands, unless he shows that he has specifically performed on his part. (Story Eq. Jur., § 771; 4 Scammon, 266; 3 Gillinan, 483; 2 Ogn. 93.)

By the Court, BONHAM, J.:

Two questions are presented by the record in this case.

First. Can a married woman in any event be held liable under her covenant, entered into during coverture, to convey real estate held by her in her own right?

Second. Upon the failure or refusal of such married woman to convey her lands under such covenant, may the aid of a Court of equity be invoked to compel money advanced on the purchase-price, and value of permanent improvements made on the premises, to be refunded?

In support of the first proposition, it is claimed by counsel for appellant, that the right of a married woman to hold real estate in her own right carries with it as a necessary incident the power of alienation.

If there is any plausible theory in support of such right in this State, its origin must be traced to this principle; for it is not derived from the common law, nor is it expressly authorized by any statutory provision. The doctrine that the right to alienate property results from the right to hold it, is maintained in general terms by good authority. (4 Kent's Com. 441.)

But it will be observed by a perusal of the authority above cited in support of appellant's position, that the author is discussing in general terms the grounds on which the right to alienate property is based, without any special reference to the rights of married women as a class. And when this author comes to speak directly of the rights of married women over their real property (2 Kent, 168), he says: "Though a wife may convey her estate by deed, she will not be bound by a covenant or agreement to levy a fine or convey her estate. The agreement by a *feme covert*, with the assent of her husband, for a sale of her real estate, is absolutely void at law, and the Courts of equity never enforce such a contract against her. In the execution of a fine or other conveyance, the wife is privately examined, whether she act freely, and without such examination the act is invalid. But a covenant to convey is made without any examination; and to hold the wife bound by it would be contrary to first principles on this subject, for the wife is deemed incompetent to make a contract unless it be in her character of trustee, and when she does not possess any beneficial interest in her own right."

This principle, as enunciated by Mr. Kent, although in one sense a disability, was not intended as a limitation of the rights of married women; but it was adopted for their protection and benefit.

Notwithstanding the doctrine which is so zealously promulgated by some (and which in some respects it is to be feared may be somewhat utopian in character), claiming an

enlargement of the rights of women, yet it is the generally received opinion that the sphere of married women's duties, as they have been heretofore generally recognized and acquiesced in, precludes the means of acquiring by them that knowledge of law and commercial transactions necessary to enable them, as a rule, to safely and understandingly enter into covenants concerning their real estate. The provision of our statute exempting married women from liability under their covenants in a deed must have had its origin, partly, at least, in this idea. (Mis. Laws, ch. 6, § 2.)

But, be this as it may, it will not be controverted that, at common law, married women are not only held incompetent to enter into covenants to convey their real estate, but they are classified with those who are under disability to make any contract whatever; because the legal entity of the wife was held to be merged in that of the husband. And whether this disability of the common law, as applicable to married women, is calculated to operate beneficially to them, or otherwise, is not the real question to be addressed to the Court in this case. The question to be determined is: What is the actual legal status of married women, as applicable to this case, under the law on that subject as it now exists?

The terms of the grant by which this property was acquired by Mrs. Wheeler, simply provide that it is to be *held* by her in her own right. (§ 4, Donation Law.) No provision is made in the Act referred to for the voluntary alienation of the wife's land acquired under it, other than "by testament duly and properly executed, according to the laws of Oregon." (§ 4, Donation Law.) Section 2, ch. 6, Miscellaneous Laws, reads: "A husband and wife may, by their joint deed, convey the real estate of the wife in like manner as she might do by her separate deed if she were unmarried; but the wife shall not be bound by any covenant contained in such deed."

This statute provides the manner in which the wife may convey her real estate, and we think by implication excludes every other manner except by devise. The manner as well

as the capacity to alienate lands is conventional, and is not a natural or inherent right. Because a married woman is allowed by law to hold lands in her own right, she would not be tolerated in conveying the same to others without any regard to the local laws on that subject.

It would not be seriously contended as a matter of practice, that under our law a person might, if he chose to do so, convey his land by the ancient mode of livery of seizin. Nor would it be claimed that a married woman might, if she chose, go into Court and revive the ancient practice of alienation by fine.

We do not think it was the intention of the framers of our Constitution and laws on this subject, to entirely segregate the proprietary interests of husband and wife and make them to all intents and purposes *two* instead of *one* in law. But on the other hand, might it not be fairly inferred from the language of the law and its contemporaneous history, that the prime object and controlling purpose was, to secure to the wife the right to *hold* such property as the means of the support of herself and family in the event that her legal protector and provider might fail, through misfortune, improvidence or death, to do so ?

It is also claimed by appellant that "it is a settled rule in equity that a *feme covert* in regard to her separate property is considered as a *feme sole*," and that she may dispose of the same as such. In support of this position, 2 Kent's Com. 164, and *Jacques* v. *M. E. Church* (17 Johns. 548) and other authorities are cited. But by a little further examination of the authority first cited (2 Kent's Com. 165–6) it will be observed that Mr. Kent qualifies his language at page 164 by saying: "A *feme covert* with respect to her separate property is to be considered a *feme sole sub modo* only, or to the extent of the power clearly given her by the marriage settlement. Her power of disposition is to be exercised according to the mode prescribed in the deed or will under which she becomes entitled to the property; and if she has a power of appointment by will, she cannot appoint by deed; and if by deed, she cannot dispose of the property by a parol gift or contract." And in the same

connection the case of *Jacques* v. *M. E. Church* is carefully reviewed and its correctness questioned.   (6 Wend. 10.)

The respondent, Mrs. Wheeler, in this case derived her title to the land in controversy from the Donation Law referred to ; and when the same is conveyed away by her it must be done in strict pursuance of the provisions of the statute on that subject.   (*Carter* v. *Chapman*, 2 Ogn. 93.) We are clearly of the opinion that, under our law as it now stands, Mrs. Wheeler is not bound by the terms of her covenant entered into with appellant, and that his prayer for a decree of specific performance under it cannot be granted.

The second proposition in this case involves the consideration of the question whether appellant is entitled to the alternative relief prayed for in complaint.   The law exempting a married woman from liability on her covenants to convey her real estate, was adopted for her better security and protection; and we do not think that it would be equitable, or in harmony with public policy and good morals, for Courts of equity, in protecting the rights of persons, to encourage the perpetration of an actual fraud by them.

We think that the allegations of the complaint in this case, which, standing upon demurrer, are to be taken as confessed, warrant an implied assumpsit, at least, against Mrs. Wheeler for the value of the permanent improvements made upon her premises by appellant.   And we think that the twenty dollars in money which was advanced to Mrs. Wheeler on account of her land, and the value of the permanent improvements made on the same (less the value of the use of the premises, if any), should be decreed to be a charge on said land until paid.   (37 N. Y. 35 and cases there cited.)

It is therefore ordered and adjudged that the decree of the Court below be modified in accordance with these views; and that this cause be remanded to such Court for further proceedings, according to law.

Decree modified.