[Filed February 19, 1889.]

## THOMAS FINLAYSON, RESPONDENT, *v.* MARGARET FINLAYSON, APPELLANT.

DEED — CONSIDERATION RECITED IN — PAROL EVIDENCE TO VARY — EFFECT OF. — A deed to real property cannot be invalidated by parol evidence showing that there was no consideration for its execution, when it contains a recital that a consideration had been received by the grantor; nor can it be shown by such evidence that the object or purpose of a deed duly delivered to the grantee was different from that implied by its terms, unless executed to secure the payment of a debt or the performance of some other act.

ID. — MAY BE SET ASIDE FOR FRAUD OR DURESS, WHEN — RESULTING TRUST. — A deed may be set aside for fraud or duress, and a trust may

arise out of a transaction which will be enforced in face of the express
terms of a deed, but it must be a trust arising by operation of law. The
parties to a deed cannot create a trust in favor of the grantor except by
an instrument in writing declaring the same.

FRAUD — EQUALITY OF FOOTING OF PARTIES. — Fraud will vitiate a contract;
but where the parties to the contract stand upon an equality of footing,
the fraud must consist of a false representation of a material fact, and the
party to whom it is made not be able, by the exercise of a reasonable cau-
tion and vigilance, to detect its falsity.

HUSBAND AND WIFE — IMPROVEMENT OF WIFE'S PROPERTY BY HUSBAND. —
Where a wife urged and importuned her husband to convey to her, in her
own right, valuable premises which the husband had acquired by the
joint efforts of both since their marriage, and the husband was induced to
make the conveyance through such urging and importunity and the assur-
ances of the wife that he should enjoy them with her as a home the same
as he had previously; and after the conveyance was made she induced
him by similar assurances to build a new house upon the premises and
otherwise improve them, at an expense to the husband of four thousand
dollars, and after living upon the premises as they usually had done for
three years , and a half, difficulty arose between them, resulting in her
expelling him therefrom: *held,* that her persuasion, importunities, and
assurances, and her subsequent conduct in expelling him from the prem-
ises, did not constitute a fraud that would justify a court of equity in set-
ting aside the deed of conveyance; but *held further,* that the amount of
the expenses incurred by the husband in building the house and in im-
proving the property should be paid to him by the wife, and should be
made a charge upon the premises in his favor.

APPEAL from the Circuit Court for the county of Baker.

*R. S. Anderson, I. D. Haynes, Thortnon Williams,* and
*M. L. Olmsted,* for Respondent.

*A. J. Lawrence* and *C. W. Manville,* for Appellant.

THAYER, C. J.—This appeal is from a decree rendered
in a suit brought by the respondent against the appel-
lant to set aside a deed to real property executed by the
former to the latter on the fifteenth day of February,
1881, or, as alternate relief, that a claim in favor of the
latter for service and expenses be charged upon the said
real property.

The parties are husband and wife, and it is claimed by

respondent that the appellant, through fraud and deceit, induced him to execute the said deed to her. The facts constituting the fraud, as alleged in the complaint, are in substance as follows: That appellant did not care for or love respondent as her husband for many years prior to the execution of the deed, and conspired with their daughter to obtain said real property in her own right and to expel the respondent therefrom, and to exclude him from all enjoyment thereof; that, in order to accomplish that object, the appellant fraudulently represented to the respondent that she loved him, that in case of his death she ought to have his lands, and that a deed conveying them to her, executed during his lifetime, would in no wise affect his equal enjoyment of them with her, and that such lands should be their home in their old age, and that if he should suddenly die it would be better for her to take and have the lands already in her own right; that the love and affection he bore her and the children were fully reciprocated, and that if he would, for the sake of that love and affection, convey the lands to her, and thereafter build upon and improve the same, he would thereby provide a home for her, and to which he would ever be welcome and be treated with the same love and affection which she was pretending to entertain for him; that if he would make such deed, erect a house on the lands, and improve the same, he should possess and enjoy it the balance of his life; that respondent believed such representations, and, relying upon the same, executed the deed, and thereafter built a house thereon and made other improvements, of the value of four thousand dollars; that he expended about three thousand dollars in making the improvements, besides his personal work and labor in accomplishing the same, and which increased the value of the premises more than five thousand dollars; that as soon as said labor, improvements,

etc., were completed, about October 1, 1884, appellant turned respondent out of doors, took the grain in the granaries, which he had sown and garnered, and drove him away, saying: "I have got now what I have been working for for twenty years," and asserted her claim to the premises, and demanded that he should vacate them, or that she would charge him rent if he staid thereon; that thereafter appellant commenced a suit for a divorce, charging respondent with cruel and inhuman treatment, which suit was still pending, and to which he had a good defense upon the merits; that by reason of the premises respondent was homeless, reduced in circumstances almost to destitution, at an age too late in life to toil; that no consideration passed from appellant to respondent for said deed, nor had appellant accounted with respondent for the expenses, toil, labor, and services performed by him, and that she refused to account for the same; and he prayed for a cancellation of the deed, or, in case that could not be granted, for an allowance of a just claim for said services and expenses, and that the same be declared a lien on the said land.

The appellant filed an answer in the suit, denying the allegations of the complaint, and the case was heard upon depositions and proofs, and the circuit court decreed to the respondent one half of the land deeded.

Neither party has printed the evidence and proofs in the briefs furnished, as required by the rules of this court, and we have no means of ascertaining the facts of the case without reading the depositions, which have been sent here with the transcript, unless we adopt the findings of the circuit court. The findings are full, and as neither party claims but that they were warranted by the evidence, we feel justified in relying upon them.

The circuit court found that the parties were married in Scotland in the year 1846, and had lived together as

husband and wife ever since that time until about October 1, 1884; that the respondent was of the age of sixty-two years, and the appellant sixty-three years; that the issue of the marriage was eight children, four of whom were living; that they were all females, and all married except the youngest, who was twenty-seven years old, and resided with the appellant; that the parties settled upon the land in question in the fall of 1864, and by their joint labor and earnings, the respondent acquired title thereto; that they had fenced and cultivated a portion of the land, and had built a house on it; that respondent was an ignorant and uneducated man, — was not able to read or write; that during their residence in Oregon the respondent had, up to about October, 1884, trusted the appellant with keeping the accounts and moneys received by him from the sales of stock, the proceeds of the produce of the farm, and the payment of all bills created in managing their business of farming, and raising cattle and horses; that the respondent was the owner of 280 acres of land of the aggregate value of about $2,500, about 70 head of horses of the value of $2,100, 10 cows of the value of $200, and 27 sheep of the value of $60, but was indebted in the sum of $2,000; that on or about March 1, 1881, the respondent fell from his horse, and was injured, which confined him to his bed from four to six weeks; this, with other sickness, and the risk he was constantly taking in his business, so alarmed him as to create a presentiment that he would meet with a sudden death by accident.. If this were to happen, he thought the appellant would lose her home, and that it was necessary, in order to prevent such a result, to deed her the land in controversy; that it consisted of 244 acres, and was of the value of $12,000, and that, in order to accomplish the purpose mentioned, the respondent did, on the fifteenth day of February, 1881, execute and deliver to the appellant a

deed to the same; that there was no money paid for the land, and that the only consideration therefor was love, affection, confidence, and trust which the respondent entertained for the appellant; that the parties by their joint and individual efforts acquired all the property mentioned, which, in October, 1884, amounted in value to $17,500; that prior to the execution of said deed, and from about the year 1876, the appellant had importuned the respondent to make her a deed to some of his property, which, she said, " was the custom of other husbands to do"; that respondent had proposed to deed to her the said 280 acres of land, but the appellant would not accept it, desiring him to convey to her the premises in question, which the former finally consented to do; that shortly after the execution of said deed, the appellant began to persuade the respondent to build upon the land deeded to her, which the respondent reluctantly did, erecting thereon a dwelling-house, at a cost, including work, labor, and material furnished, of $1,600, all of which was paid for by him except about $200; that the respondent, after the execution of the said deed, continued to occupy said premises, cultivate the same, and keep his stock thereon as he had previously done, until October 1, 1884; that during said time he reset, repaired, and built a fence around two thirds of the land, cleared brush and timber from portions of it, leveled the surface thereof, and did work to the value of $3,000, no part of which had been paid or tendered him; that on said last-mentioned date the appellant determined that she would no longer live with the respondent as a wife, and that he should not remain upon the premises, and instituted aggressive measures to drive him off.

I conclude from these and other findings made by said circuit court that the parties married and lived together about the same as married people usually do; that they

were industrious and frugal, and thereby accumulated a reasonable competency; that the appellant conceived the idea that she should have the title to the property in question in her own name, and by her urgent solicitations induced the respondent to execute the deed in question. It does not appear that she entertained a design while she was importuning the respondent to make the deed of procuring it for the purpose of dispossessing him or of expelling him from the premises. She undoubtedly thought that a conveyance of the land to her would exhibit a mark of confidence, and enable her to assume more individuality. Neither party anticipated that the execution of the deed would effect a change of the occupancy or management of the property conveyed. They both doubtless expected that the same course which they had theretofore pursued with reference to the property would be continued, and that their relations generally would be unaffected. The circuit court, actuated by a generous spirit of equity, divided the property between the parties. This seems to have been a just disposition of the affair in view of the circumstances of the particular case, and we would gladly sustain it if we could do so in accordance with legal principles. But equity, like the common law, must be controlled by general rules, which are as unalterable in the one case as in the other. The intention of the respondent in executing the deed to the appellant must be ascertained from the terms of the instrument and the circumstances surrounding the transaction.

When one party duly executes his deed to real property to another, he is precluded from showing by parol testimony that the object and purposes of the instrument were different from that implied by its terms, except in the case of deeds executed as a security for the payment of debts. "The grantor in an absolute conveyance of land, not alleging fraud or mistake, cannot prove by parol that

XVII. OR.—23

the grant was in trust for himself." (*Sturtevant* v. *Sturtevant*, 20 N. Y. 39.)

Nor can a deed be invalidated by parol evidence that there was no consideration for its execution, where there is one acknowledgment in it.

"In every case where a consideration is required, it is not necessary that the consideration be actually passed to the grantor, if the receipt of a proper consideration is acknowledged by him in the deed. But it must be acknowledged in the deed, or it must be proved *aliunde*, to have actually passed to the grantor. But while parol evidence is inadmissible to contradict the acknowledgment of consideration in order to invalidate the deed between the grantor and grantee, yet the acknowledgment is only *prima facie* evidence of the character and amount of the consideration. The amount and kind of consideration acknowledged is presumed to be the consideration agreed upon; but it may be shown by parol evidence, in an action to recover the consideration, that a different kind or amount of consideration had been agreed upon." (5 Am. & Eng. Encyc. of Law, 436, 437.

Transactions of great importance would have no stability if the parties thereto were permitted to show by parol proof that written instruments solemnly executed by them did not mean what the language of the instrument purported. An absolute deed to real property conveys from the grantor to the grantee all the title of the former, and he will not be allowed to prove by parol evidence that it was made in trust for him, or that there was a reservation in his favor of any right not expressed therein, nor that the deed is invalid for the want of consideration, where he acknowledges therein the receipt of one.

A deed may be reformed in case of a mistake made in reducing its terms to writing, or it may be set aside for fraud or duress; and a trust will often arise out of a trans-

action which will be enforced in face of the express terms of a deed; such a trust, however, belongs to that class which are denominated implied trusts, and which arise by operation of law.

No implied trust can arise from the facts in this case; nor could any trust have been created in favor of the respondent in the premises conveyed except by an instrument in writing declaring the same.

The deed in question can only be avoided by proof that the appellant procured it to be made through fraud, and it is apparent that the findings of the court are not sufficient to warrant the conclusion that such was the fact. The fact that the appellant solicited and importuned the respondent to execute the deed, and that the parties about three years and a half thereafter had difficulty, and the appellant asserted her legal rights as owner of the premises, and attempted to expel the respondent therefrom, do not establish a fraudulent intent on her part to deprive him of his property. She had a right to persuade him to make her a deed of a part of the property, which her labor and earnings had helped to accumulate, and after obtaining it, to manage, sell, convey, or devise the same by will, to the same extent and in the same manner that he could property belonging to him. Section 2992 of the Annotated Code of Oregon vests her with that right, and the provision was in force at the time of the execution of the deed. She was also empowered, in case the respondent had possession or control of the property, to maintain an action growing out of the same, in the same manner and extent as if they were unmarried. (Ann. Code, sec. 2870.)

I cannot discover from the findings that any such deception was practiced upon the respondent in procuring the execution of the deed as would justify the court in setting it aside. The appellant undoubtedly, in urging

him to convey the land to her, held out the inducement that they would continue to occupy it as they formerly had done, and she probably believed at the time that such would be the case; but trouble seems to have arisen between them, occasioning serious discord in their affairs. This may have been the fault of the appellant; but if so, it would constitute no ground for avoiding the deed.

The respondent should have protected himself by a condition in that instrument against the consequences of such an occurrence.

Courts cannot relieve parties from imprudent bargains; they must suffer the consequences of their indiscretion, unless an undue advantage has been taken of them. Fraud will vitiate a contract; but where the parties to it stand upon an equality of footing, the fraud must consist of a false representation of a material fact, and the party to whom it is made not be able, by the exercise of reasonable caution and vigilance, to detect its falsity. But upon the other ground of relief claimed in the complaint in the suit, I think the respondent should prevail. The circuit court found that he was induced and led to believe, and did believe, that in doing the work and labor in building the new house, making the fencing and other improvements upon the premises, he was making for himself and appellant a more comfortable home, which they would enjoy the benefits of and of the profits of the land during the remainder of their lives, and that the fact of his making the deed would not prevent his enjoyment of the land and the improvements thereon, or in any manner disturb the relation between himself and the appellant, and that they would hold the property jointly.

Under such circumstances, the respondent should, when he has been expelled from the premises by the act of the appellent, be paid for the labor and the expense incurred by him. It would be inequitable to allow the appellant

to retain the fruits of the respondent's labor and expense, after having induced him to bestow them under the assurances mentioned, which she had failed to observe. She had the right under the statute to take the management of the premises, but to urge him to make the improvements with the understanding that he was to enjoy it, and then deny him the right, without paying him therefor, is bad faith and fraudulent.

This court held in *Frasey* v. *Wheeler*, 4 Or. 190, that a court of equity would not encourage a married woman to perpetrate a fraud; and that where she had received money upon a contract for the sale of her land, and the purchaser was induced to put valuable improvements upon it, the amount of the money and value of the permanent improvements should be charged upon the lands. In that case the woman was dealing with an outside party; but I think a husband has rights in such matters which a wife is bound to respect.

The facts in this case show that the respondent bestowed labor and expense upon the land in question, after the execution of the deed to the appellant, to the amount at least of four thousand dollars, and that he was induced to do so upon the assurance that he should occupy and enjoy the property; that in October, 1884, the appellant notified him that he should not remain on the premises any longer, and that since that time he has had no use of them. In view of these facts, I am of the opinion that the respondent is entitled to be paid said sum of four thousand dollars, with interest thereon at the rate of eight per cent per annum from the first day of November, 1884; and that the amount should be made a charge and lien upon the premises conveyed by the respondent to the appellant; and that in default of the payment of the same, with accrued interest, within ninety days after the entry of the decree herein, that the

respondent have execution for the sale of said premises for the satisfaction of such amount and accuring interest, as in case of execution on foreclosure of lien on real property, and that the respondent recover costs and disbursements in the suits in both courts.

LORD, J., took no part in deciding this case, as he was absent when it was heard.