FIRST NATIONAL BANK V. CENTRAL CHANDELIER CO. ET AL.

1. ORAL DECLARATIONS NOT ADMISSIBLE TO SHOW PURPOSES OF AMBIGUOUS WRITTEN INSTRUMENT.

   Oral declarations of the parties to a written instrument made on or before the execution of the same, are not admissible in evidence to show an intention or purpose not therein expressed, although the ambiguity in the instrument may make the purposes or intentions of the parties uncertain.

2. NOR TO PUT COURT IN POSSESSION OF FACTS WHICH WILL AID IN CONSTRUING SUCH INSTRUMENT.

   Nor is such evidence admissible on the ground that it will put the court in possession of facts which will aid it in the construction of the written instrument, in the absence of allegations warranting the interposition of a court of equity on some of the well established grounds upon which courts go behind written instruments.

3. ORAL EVIDENCE ADMITTED TO SHOW NATURE OF TRANSACTION EVIDENCED BY WRITTEN AGREEMENT.

   Where a transaction affecting title to property evidenced by a written instrument is under investigation in a court of equity, and the question to be determined is whether an unconditional conveyance of the title or a mortgage or pledge to secure a loan was intended, evidence of oral agreements and conversations of the parties prior to and contemporaneous with the execution of the instrument will be admitted for the purpose of determining the true character of the transaction. Parker, J., dissenting from this ruling on the ground that where the instrument is accompanied by a writing, which has no mark of incompleteness, but seems to give a full record of the transaction and the terms upon which the property conveyed in the nstrument should be held by the transferee or redeemed by the transferer—oral evidence should not be admitted tending to show a different intent than that expressed therein.

4. RELATIONS OF THE PARTIES, CONTEMPORANEOUS AND SUBSEQUENT ACTS ADMISSIBLE.

   Evidence relating to the relations of the and their contemporaneous acts, as distinguished from their utterances, and as to all subsequent acts and admissions, is competent.

5. IT IS NOT ESSENTIAL THAT THERE SHOULD BE A PROMISE TO REPAY.

   It is not necessary to constitute a pledge out of what appears, on its face, to be an absolute transfer of property, than there should be an express promise to repay: when the relation of lender and borrower exists the law implies a promise to pay.

6. FACTS UNDER WHICH TRANSFER OF STOCK HELD TO BE A MERE PLEDGE.

   C. executed blank assignments of certificates of stock to I.; the name of transferee, and dates of transfer, were never inserted and no transfer was made on the books of the company issuing the stock. The transfer was accompanied by a written instrument in which C., after transferring the stock to I., guaranteed that he should receive at least 6 per cent. per annum on it and stated that I. agreed to allow C. the option of redeeming the stock when he could do so. I. exercised none of the rights of ownership in relation to the stock and C. continued to vote it without consulting him. *Held*, the transaction amounted to a pledge rather than a conditional sale of the stock.

PARKER, J.

There are a great many parties defendant in this case, and among them are F. P. Chapin and Armina D. Isherwood. A part of the purpose of the action is to determine the ownership of stock in the Central Chandelier Company and enforce the statutory liability of stockholders. The issue which is presented to us here is between F. P. Chapin and

Mrs. Armina D. Isherwood, and the stock in question about which these issues of ownership and liability arise consists of twenty-five shares of the stock of defendant company amounting to $2,500.

It is conceded that the stock certificates for these twenty-five shares of stock were issued originally to Mr. Chapin. They consist of three certificates : two for ten shares each and one for five shares, issued prior to May 3, 1893, and it is conceded that Chapin owned this stock up to that date. Chapin avers that he then sold and transferred the same to F. P. Isherwood, from whom Armina D. Isherwood derived whatever title she may have as residuary legatee of his estate under his will. Mrs. Isherwood contends that the stock was not sold to Mr. Isherwood, but was pledged to him to secure a loan of $2,500 which he made to Chapin on the date of the transfer, viz., May 3, 1893. It has been determined in Ohio that a pledgee of stock is not bound by the statutory liability. The assignments on the back of these certificates are signed by F. P. Chapin ; there is a blank form and a space left for the name of the transferee and spaces left for the dates, etc., which were not filled in ; it appears that they were never filled up, and that no transfer was ever entered on the books of the Central Chandelier Company.

Contemporaneously with the execution of these blank assignments, and as a part of that same transaction, a certain paper was executed in duplicate by the parties, one copy of which was held by Chapin and the other by Isherwood, the latter being attached to the stock certificates and placed by Mr. Isherwood among his effects, where it was found by his executors. The exact scope and meaning of this paper it is somewhat difficult to determine from its terms alone. It is contended on behalf of Chapin that it clearly imports a sale with a conditional right or option of repurchase reserved. On the part of Mrs. Isherwood it is contended that it shows, if not clearly, yet sufficiently, that the stock was placed in pledge to secure a loan of $2,500. It is conceded by both that upon the transfer of the stock Mr. Isherwood let Mr. Chapin have $2,500. This instrument is written upon a letter-head of the Bee Company, in which Mr. Chapin at that time had an interest and of which he seems to have been manager. The paper was prepared by Mr. Chapin with the assistance of a friend. Mr. Isherwood appears to have had no part in that. Omitting the heading of the Bee Company, it reads as follows:

TOLEDO, OHIO, May 6, 1893.

"For and in consideration of $2,500 paid to me this day by F. P. Isherwood I have assigned and do transfer to him 25 shares of stock in the Central Chandelier Company amounting to $2,500, full paid and non-assessable, and on which I guarantee that he shall receive at least 6 per cent. per annum payable annually.

"F. P. Isherwood agrees to allow said Chapin to have the option of redeeming said stock when he can do so, by refunding the amount of $2,500 to said Isherwood with interest.

"E. P. CHAPIN,
"F. P. ISHERWOOD."

The words "payable annually" were added at the instance of Mr. Isherwood ; the remainder of the paper is typewritten, and the words just mentioned were written in by Mr. Chapin.

On the part of Mrs. Isherwood parol evidence was introduced on the hearing of conversations between Mr. Isherwood and Mr. Chapin at

the time of the execution of these papers and blank assignments and of the turning over of the stock to Isherwood by Chapin. Some parts of these conversations are testified to by her as having transpired prior to the execution of the papers, and some as having taken place subsequently thereto, but all on the same day and as a part of the same transaction. Some of these conversations as testified to related to the terms upon which the money was to be exchanged for the stock, and tend to show that the money was loaned and the stock taken in pledge as security for the repayment of the loan with interest.

Other parol evidence was introduced on behalf of Mrs. Isherwood of subsequent declarations and transactions on the part of Chapin, tending to show that he regarded the transaction as a loan with stock placed in pledge as security, and that he claimed to be the owner of the stock after the transfer referred to. The introduction of this oral evidence was objected to by Chapin, and at the close of the testimony he moved that it be stricken out and disregarded. We shall now pass upon this motion. Counsel for Mrs. Isherwood contends that this oral evidence is admissible on various grounds. First, that it is admissible because there is an ambiguity in the writing which may be cleared up by such oral proof under the rules relating to that subject; that the contract is so unskillfully drawn as to render the meaning or intention of the parties obscure and doubtful, and that this evidence is admissible to show the surrounding circumstances so that thereby the court may be aided in putting a construction upon the instrument.

We conclude that the evidence of oral declarations of the parties to these instruments, made at or before their execution, is not admissible for the purpose of showing an intention or purpose not therein expressed, though ambiguity in the instrument may make the purposes or intentions of the parties uncertain. We also conclude that it is not admissible on the ground that it may put the court in possession of facts that will aid it in the construction of the instrument. We think that it is settled in the case of Tuttle v. Burgett's Admr., 53 O. S., 498, and by many other decisions. I will read the fourth syllabus in this case:

"The oral declarations of a party to a written instrument, made before or at the time of its execution, of an intention or purpose not therein expressed, or different from that to be derived from its terms, are not within the rule which permits extrinsic evidence of the situation of the parties and of the surrounding circumstances when the instrument was executed, and are inadmissible in an action on the instrument where its reformation is not sought."

I may say that here there is no prayer for reformation, and no facts stated in the pleadings such as afford grounds for reformation—no allegation or fraud or mistake in the preparation of the instrument or reduction of the agreement to writing; nor is there any allegation that on account of the mutual confidence reposed by the parties in one another any part of the agreement was not reduced to writing. The author of Jones on Mortgages, in the course of his discussion of the law relating to the admission of parol evidence at law and in equity to show that a deed absolute on its face is in fact a mortgage, makes this statement: (I read the closing paragraph of section 282.)

"Parol evidence is admissible in equity to show that a deed absolute in form is in fact a mortgage, not because the rules of evidence are different in equity from what they are at law, but because the jurisdiction

Lucas Circuit Court.

and power of the courts with reference to dealing with the facts presented are different. The rules of evidence are the same in both courts."

From this it would seem that even if reformation need not be prayed for, allegations should be made of facts warranting the interposition of a court of equity on some one of the well established grounds upon which such courts proceed in going behind written contracts.

It is contended that this evidence is admissible on the independent ground that, where a transaction affecting the title to real or other property, evidenced by a deed or other written instrument, is under investigation in a court of equity, and the question to be determined is whether an unconditional conveyance or transfer of title, or a mortgage or pledge to secure a loan was intended, the court will admit evidence of the oral agreements and conversations of the parties prior to and contemporaneously with the execution of the written instrument, though varying or contracting the terms thereof, for the purpose of determining the true character of the transaction. A majority of the court are of the opinion that the testimony of Mrs. Isherwood as to the conversations between Mr. Isherwood and Mr. Chapin before and at the time of the execution of these instruments is admissible under the rules and authorities relating to this subject.

I cannot reconcile my mind to this view, though I concurred therein with my brethren at the time the testimony was received. It is clear that a deed absolute upon its face may be shown by oral evidence to be a mortgage ; but a deed is an instrument whereby title is conveyed ; it usually has but few of the elements or terms of an executory agreement—often it has none. Such terms or elements are not necessary to its completeness as an instrument of conveyance. Evidence of contemporaneous agreements may be admitted in most cases on the ground that the deed does not purport, either expressly or by necessary implication, to give the whole record of the transaction or the terms of the agreement as to events to transpire in the future. The rule as to showing that there was a contemporaneous transaction and agreement which had the effect of converting the deed into a mortgage, might be applied to the assignment of these stock certificates if there were no other written evidence of the agreement, though I doubt if these rules are applicable to transactions of this character at all. But here we have an independent writing which bears no mark of incompleteness, but seems to contain a full record of the transaction and the terms upon which the stock might be held by the transferee or redeemed by the transferer. To receive evidence of prior and contemporaneous conversations between the parties to this instrument, tending to show a different intent or purpose than that expressed therein, and tending to contradict the writing and import into it distinctly new terms, seems to me to violate the plain and well settled rules of law upon this subject. Yet I am bound to say that a careful reading of the authorities, (and we have examined those cited by counsel, and many others in addition thereto), has shaken my faith somewhat in this position, though they leave me unconvinced that I am wrong.

I call attention especially to Slutz v. Desenburg, 28 O. S., 371. In that case a deed in the usual form was executed and delivered and the grantee took possession under it. At the same time and as a part of the same transaction an article of agreement was prepared and signed by the parties, as to the proper construction of which they afterwards differed. An action was instituted to redeem. The deed and this article

of agreement—which appears to be complete and to set forth all the terms of the agreement of the parties—were introduced in evidence, but in addition thereto oral evidence was admitted of the conversations and declarations of the parties with respect to this transaction both prior to and contemporaneously with the execution of the writings. In the course of his opinion Judge Ashburn says—at page 378 :

"The course of decisions in this class of cases indicates that courts are vigilant to discover whether a condition of defeasance in law or fact attaches to the deed absolute in form. To this end they scrutinize the prior pecuniary relations of the parties, each towards the other ; contemporaneous acts bearing on the question ; all after acts and admissions of the parties that are competent to be considered as evidence in relation to 'the transaction ; any material inadequacy of consideration, and the terms of any written agreement entered into by the parties.

"This brings us to a consideration of the facts of this case as presented by the bill of exceptions, and an application of the legal principles we have been considering. It is proper to say that parol evidence may be received and considered, as tending to show the intention of the parties and the true character of the transaction.

He then proceeds to discuss the matter as to the written agreement, and in that case, as I have pointed out—there was not only a deed absolute upon its face, but a written agreement between the parties which seemed to set forth completely the terms of the arrangement, and the oral evidence admitted was of the character that I have indicated ; so that in that case, the admission of oral evidence seems to have received the approval of the court, though it will be noted, upon examining the case, that nothing is said upon this point in the syllabus, and there appears to have been no question raised or made upon the trial of the case, or upon the submission of it to the Supreme Court, as to the admissibility of this oral evidence, so that it may be that we would be justified in treating this as *obiter dictum*. The case just cited seems to me to go farther in that direction than any other authority that has been brought to our attention. It is said that this rule owes its origin to the tender regard of courts of equity for the rights of the borrower ; that they are inclined to discover and protect a defeasance and right to redeem whether written expressly in an instrument or discovered otherwise. The rule is not invoked here by the one who is said to be the borrower ; but we conclude that to the extent the rule has been established it may be invoked and given application at the instance of either the borrower or lender, either the grantor or the grantee, and that it is not a rule with which the borrower may play fast and loose, using it when it seems to him to be advantageous so to do and objecting to its use when its use may be to his disadvantage.

As to the admissibility of evidence relating to the relations of the parties and their contemporaneous acts as distinguished from their utterances bearing upon the transaction, and as to all subsequent acts and admissions, we none of us entertain any doubt. The motion to exclude will therefore be overruled as to all the evidence received over objection. Upon the whole evidence we have arrived at the conclusion that this stock was not purchased by Mr. Isherwood, but was pledged to him as claimed by Mrs. Isherwood. We think we should have arrived at this view without the aid of the testimony as to prior and contemporaneous conversations between Mr. Isherwood and Mr. Chapin ; that the other testimony indicates a loan and a pledge rather than a sale with a right to

redeem. And that this was the purpose and intent of the parties, we think was made clear by their subsequent conduct with respect to this stock and their subsequent declarations upon the subject; but since we cannot be sure that our minds have not been biased and inclined to this construction by this oral evidence, we deem it only fair and proper to rule that it shall be retained for consideration. The criterion upon which it shall be determined whether this is a conditional sale, as contended by the one party, or a pledge, as contended by the other, is laid down in Slutz v. Dessenburg, *supra*. I need read no more than a part of the syllabi :

"A deed absolute in form, if intended to secure the payment of money, and the relation of debtor and creditor exists between the grantor and the grantee at the time of its execution, will be treated as a mortgage.

But where no such relation exists, and the grantor and grantee, at the time of the execution of the deed, agree in writing that the grantor shall have the option to re-purchase in a given time, at a certain price, the transaction is a conditional sale."

There are illustrations of the application of this rule in the cases cited in the opinion. Looking at the assignments we find them, as I have said, in blank. This affords some negative evidence that Mr. Isherwood did not expect to be invested with a full legal title, and taken in connection with the fact that he never had the blanks filled with his name, and never took any action towards putting himself in position to exercise or toward exercising the rights of an owner of the stock, or in the direction of the affairs of the company, it affords somewhat persuasive evidence that he did not regard himself as the owner of the stock. On the other hand the voting of the stock from time to time by Mr. Chapin, without, so far as the evidence discloses, consulting with Mr. Isherwood, or seeking any authority from him to do so, indicates, we think, very strongly that Mr. Chapin regarded the stock as his own, subject only to the rights of Mr. Isherwood as pledgee. The provision in the contract whereby Chapin guarantees to Isherwood a dividend of not less than six per cent., payable annually, we regard as a stipulation for the payment annually for the use of that money; it amounts to a promise that six per cent. interest shall be paid annually on the $2,500; and that the parties so regarded it is shown by the subsequent payment by Chapin to Isherwood of what Chapin calls "interest" when he comes to give his testimony upon that subject.

In sec. 325, Jones on Mortgages, it is said:

"Evidence of the continuance of the debt, such as the payment of interest upon it, or the extension of the time of payment, is generally conclusive of the character of the original transaction as a mortgage."

The clause wherein an option is given to Chapin to "redeem" upon "refunding" the $2,500 and interest, uses apt words to express a right of redemption. The "option" to redeem amounts to a "right" to redeem, and does not imply an option or right to decline to redeem and thereby acquire rights different from those of debtor and pledgor. The only feature of an ordinary pledge that is lacking is an express promise to repay the $2,500. As to that I call attention to Marshall v. Stewart, 17 O., 356. The syllabus reads as follows:

"Where land is conveyed by an absolute deed, and the vendee at the same time delivers to the vendor a contract by which he agrees to reconvey the premises by a specified time, upon the repayment of the purchase money with interest, the circumstances furnish presumptive evi-

Bank v. Central Chandelier Co. et al.

dence that the deed, although absolute upon its face, was intended as a mortgage, and it will be so held in equity."

Upon reading this case it will be observed that there, as here, there was no express promise upon the part of the borrower to repay the money—the promise was upon the part of the lender that if the money was repaid with interest he would reconvey. So that the fact that there was no express promise upon the part of the borrower here we do not regard as conclusive upon the rights of the parties; the relation of debtor and creditor lender and borrower existed there, and we find that it existed here and the law implies a promise to repay within a reasonable time. It is sufficient that the money was loaned and the stock pledged, as we find the fact to be—the time and terms of repayment need not be stated. Perhaps in the case at bar, on account of the provision that Mr. Chapin is to have the privilege of redeeming the stock when he can do so, the rule as to a reasonable time would be modified somewhat by the circumstances of Mr. Chapin—that it amounts to an obligation to pay within a reasonable time, dependent somewhat upon his circumstances. This was a transaction between a nephew and an uncle who appear to have been on very good terms; the uncle appears to have been inclined to help his nephew, so that an arrangement of that kind under the circumstances, is not extraordinary.

The so-called guaranty that the stock is full-paid up and non-assessable, that it amounts to $2,500, and that the transferee shall receive at least six per cent. per annum, payable annually, amounts to an undertaking that if the stock would not produce par and six per cent. (which it will be seen, would satisfy the debt, the amount of the debt being exactly equal to the amount of the stock), Mr. Chapin would pay the balance. This defines Mr. Isherwood's rights as pledgee and Mr. Chapin's obligation as pledgor, and falls but little short, if it does not quite reach a promise to pay the $2,500 with interest.

Upon these conclusions as to the facts a judgment will be entered dismissing Mrs. Isherwood with her costs, and against Mr. Chapin for the amount of this stock.

*Smith & Beckwith*, for plaintiff.

*Doyle & Lewis*, for defendant Chapin.

*Cummings & Lott*, for defendant Mrs. Isherwood.