248

Argued May 27, affirmed August 11, 1975

ESTATE OF MARY PLETZ, DECEASED.
KUGEL ET AL, *Respondents, v.* PLETZ
(No. 117647), *Appellant.*
538 P2d 962

*Fred A. Granata,* Portland, argued the cause and filed the briefs for appellant.

*Robert C. Lucas,* Portland, argued the cause for respondents. With him on the brief were Benson, Arenz, Lucas & Davis, Portland.

Before Schwab, Chief Judge, and Thornton and Lee, Judges.

LEE, J.

Appellant is the proponent and respondents are the contestants in this will contest.

Contestants (testatrix's three daughters) alleged that the will was invalid because (1) the testatrix lacked sufficient mental capacity to make a valid will and (2) the will was the product of undue influence of the proponent. Proponent (testatrix's only son) denied both of these allegations and asked the trial court to determine the validity of certain *inter vivos* gifts from the testratrix to contestants. The trial court held for the contestants without assigning any reason.

Proponent urges on appeal that because of their propinquity the will and the gifts must both be valid, or both be invalid. Contestants claim that (1) the will was the product of undue influence and (2) the testatrix had mental capacity to make the gifts but (3) she had insufficient capacity to execute the will. Since we answer the first two contentions in the affirmative, we do not reach the third.

The will in contest was executed February 5, 1970 and willed half of testatrix's estate to proponent

and equally divided the other half among the three contestants. It differed from a previous will executed October 13, 1967 which had provided for $1,000 to each of testatrix's eight grandchildren and division of the remainder equally among the testatrix's four children.

In 1960 proponent received $9,000 from testatrix to help him avoid foreclosure on certain real property. From October 20, 1969 to January 29, 1970, the testatrix made gifts by checks of nearly identical amounts to each of the three contestants, totalling $38,920. Contestants Kugel and Barber testified that they were each told by the testatrix that one of her reasons for giving the gifts to the daughters was so that she would be alive to see them have it.

There was some evidence that between 1968 and the time of her death (January 11, 1973) testatrix's mental capacity became impaired due to cerebral arteriosclerosis and double aphasia.

The two attorneys who had witnessed the 1970 will both predeceased the testatrix. One of them had witnessed the 1967 will. The proponent lived with the testatrix continuously from 1954-1971.

Contestant Kugel, who lived across the street from testatrix and saw her nearly every day testified that the testatrix told her she changed the 1967 will to "keep peace in the family" and because of "static" from the proponent. Kugel also testified that the testatrix told her several times that she (the testatrix) was not sure about the new will and wanted her to look at it.

The testatrix's neighbor, Mrs. Mueller, said that in the 1969-70 period, the testatrix seemed to be voicing not her own opinions but those of the proponent. Mueller, however, did not relate this general observation directly to the will.

Dr. Uhle, testatrix's personal physician, testified that:

> "* * * A single act of a simple nature like writing a check for groceries or writing a check for rent, or writing a check for something like this, I think this probably she would have understood, and she could have reasoned that situation. It was a one situation, a one-item situation, and I think this probably she could have understood."

There was no expert medical testimony contradicting this opinion. The proponent himself testified that the testatrix knew what she was doing when she made the gifts.

### I  Validity of the Gifts

■ The requirements for an *inter vivos* gift are set forth in *Grignon v. Shope,* 100 Or 611, 616, 197 P 317 (1921):

> "* * * The essential elements of a gift inter vivos are, (1) a donor competent to contract; (2) freedom of will of donor; (3) the gift must be complete and nothing left undone; and (4) the property must be delivered by the donor and accepted by the donee; (5) the gift must go into immediate and absolute effect * * *."

Factors 2, 3, 4, and 5 are not disputed in this case. Concerning the first factor, the Supreme Court, in *Kruse v. Coos Head Timber Co.,* 248 Or 294, 306, 432 P2d 1009 (1967), stated that:

> "* * * To have the mental capacity to contract it is necessary that a person have the ability to comprehend the nature of the transaction in which he is engaged and to understand its quality and consequences. *Coleman v. Coleman,* 85 Or 99, 103, 166 P 47 (1917) and cases cited therein. * * *"

This requirement is met by the aforesaid testimony of testatrix's personal physician.

The trial judge observed that if the $9,000 received by the proponent was valued with interest to date, it would approximately equal the gifts made to the contestants.

The testimony of contestants Kugel and Barber that the testatrix gave the contestants the money so she could be alive to see them enjoy it also suggests that the testatrix knew what she was doing and why she was doing it.

In summary, we find that because of (1) the uncontradicted medical testimony, (2) the equalization motive, for the gifts, and (3) the motive to give the money to the daughters while she was alive to see them have it, the testatrix did have the mental capacity to make the gifts.

## II   Undue Influence

■■ In *In Re Reddaway's Estate*, 214 Or 410, 419, 329 P2d 886 (1958), the Supreme Court stated:

"* * * The question is, has the influencer by his conduct gained an unfair advantage by devices which reasonable men regard as improper? * * *"

The facts in *Reddaway* are similar to those of the instant case. The proponent was in a position of dominance and had lived with testatrix continuously for the 16 years prior to execution of the 1970 will. The testatrix was susceptible to influence due to probable senility. *See Reddaway*, 214 Or at 417 and 426. These circumstances alone, of course, do not establish undue influence.

However, the question arises whether there was a confidential relationship between the testatrix and the proponent-beneficiary. The Supreme Court has said that:

" 'A confidential relationship * * * means a fiduciary relationship, either legal or technical,

wherein there is a confidence reposed on one side with *a resulting superiority and influence on the other*. It may be a moral, social, domestic or merely a personal relationship'. (Italics added.)" *Doneen v. Craven, Executor et al,* 204 Or 512, 522, 284 P2d 758 (1955).

In this case there does appear to be that "confidence reposed on one side with *a resulting superiority and influence on the other*" which marks a confidential relationship. Therefore, the following statement by the Supreme Court in *In re Estate of Elise Rosenberg,* 196 Or 219, 230, 246 P2d 858 (1952), becomes relevant:

"* * * Where a confidential relationship exists between a testator and the beneficiary *slight* evidence is sufficient to set aside a will on the ground of undue influence. [Citing cases.]" (Emphasis supplied.)

We conclude that the (1) confidential relationship between the testatrix and the proponent, (2) doubling of proponent's share of the estate, (3) execution of the new will on a trip accompanied by the proponent, and (4) susceptibility of testatrix to influence because of probable senility, were sufficient to establish that the new will was executed as the result of undue influence.

Affirmed.

SCHWAB, C. J. and THORNTON, J. concur in the result.