Argued May 8, decided June 3, rehearing denied July 14, 1913.

## JENKINS *v.* JENKINS.

(132 Pac. 542.)

**Deeds—Validity—Failure of Consideration.**

1. Where an undivided interest in land was conveyed to the grantor's brother without other consideration than an understanding that the grantee and his wife should live with the grantor and cultivate and improve the farm for five years, which they failed to do, it would be inequitable and unfair to sustain the conveyance, although no actual fraud was imputable to the grantee.

**Gifts—Presumptions and Burden of Proof.**

2. A gift obtained by any person standing in a confidential relation to the donor is *prima facie* void, and the burden is on the donee to prove that it was the donor's free, voluntary, unbiased act.

**Gifts—Presumptions and Burden of Proof.**

3.   Gifts between persons in confidential relations are jealously scrutinized by courts of equity, and to set them aside it is not necessary that actual fraud or legal incapacity to contract or make a will should exist.

**Deeds—Sales—Constructive Fraud.**

4.   Where an owner of land and personal property over 60 years old without consideration conveyed an undivided interest therein to his brother in whom he had implicit confidence, who was more accustomed to transacting business than the grantor, and who prepared the preliminary contract and gave the attorney the information from which he drew the deed and bill of sale, the grantor believing that the instruments would be of no effect if a partnership arrangement with his brother for the cultivation of the land fell through within five years, the transaction was a constructive fraud on the grantor, vitiating the deed and bill of sale, since the circumstances required the grantee to make a full disclosure of the purport of the conveyance, or to abstain from gaining any selfish benefit in the transaction.

**Partnership—Accounting.**

5.   Upon an accounting between partners in the cultivation of land, one of the partners would not be permitted to share in crops raised during a period during which he contributed little or nothing to aid in the cultivation of the farm.

From Harney: DALTON BIGGS, Judge.

Statement by MR. JUSTICE BEAN.

Plaintiff, Jay Jenkins, brings this suit against Samuel F. Jenkins for an accounting and dissolution of a copartnership between plaintiff and defendant.

Defendant denies the partnership and alleges that plaintiff and defendant are brothers; that on the 29th day of June, 1911, without any consideration therefor, defendant executed and delivered to plaintiff a deed of conveyance of an undivided one-half interest in his farm consisting of one quarter section in Harney County, Oregon, and a bill of sale of an undivided one-half interest in certain personal property on the farm; each instrument reciting the consideration of $1. The Circuit Court rendered a decree for an accounting and dissolution of the partnership, and defendant appeals.

The facts necessary for a determination of this case are as follows: In 1889 defendant, Samuel F. Jenkins, settled upon the quarter section of land on Calamity Creek, in Harney County, Oregon, as a homestead and obtained title therefor from the government of the United States. He has since resided upon the land and is of the age of 64 years. Plaintiff, J. Jenkins, had been engaged as foreman in a coffee house in Chicago for about 30 years, and at the time he changed his residence was receiving a salary and commission amounting to some over $100 per month. About September, 1910, plaintiff's wife came from Chicago on a visit to defendant at his ranch, and it was planned that she and her husband should come to Oregon to reside with defendant, partly on account of their health. She had the asthma, and it was thought that outdoor life would be conducive to plaintiff's health. Defendant returned to Chicago with Mrs. Jenkins to visit his brother, Jay Jenkins, and the matter of their moving to Oregon was thoroughly discussed. Plaintiff asked for what sum he would sell a one-half interest in his farm, stock, machinery, tools, etc. Defendant answered that he would not sell an interest therein, but that he would give his brother an undivided one-half interest in the land, stock, etc., if his brother and wife would come to Oregon and live with him for at least five years, and improve and cultivate the ranch during that time. Plaintiff asserts that the conveyance of the land and the transfer of the personal property were made as an absolute gift, in contemplation of a partnership entered into between them for the purpose of farming. While in Chicago they purchased a portable sawmill and tools for $235, to be used on the farm, plaintiff paying for the same. In November, 1910, plaintiff and wife returned to Oregon with defendant, bringing their household goods, and the machinery and tools, and moved to the farm

in question.   Both parties proceeded to work upon the land, repair the buildings, set up the sawmill, and run the same.   All went smoothly between the brothers for a time until August, 1911, when the mill failed to saw the lumber of uniform thickness, and perplexities arose which resulted in a quarrel.

Jay Jenkins, plaintiff, testifies that it was the intention to run the ranch together and to pay defendant's indebtedness and expenses from the produce of the farm; that the question of ''profit and loss was not brought up.''

On April 12, 1911, before the time of the quarrel, plaintiff requested defendant to execute some contract, in order that he and his wife might not be ejected from the place in case of the death of the defendant.   Plaintiff prepared, and they both signed, the following contract:

''Oregon, Van., Apr. 12–11.

''To Whom It May Concern:—This is to certify that I, Samuel F. Jenkins, being of sound mind & memory, I enter into and agreement whereby I give to my brother J. Jenkins one-half interest in my ranch, farming implements, stock and all buildings.   Thereon at the time of this agreement my ranch is known as west half of the south west quarter of section thirty-four in township eighteen south and the lots number three and four of section three in township nineteen south of range thirty-three and one-half east of Willamette meridian in Oregon containing one hundred and sixty-one and eighty hundredths of an acre I made this agreement of my own free will and accord.   Proper & legal documents will be recorded as soon as we can go to Burns the county seat.   The following outstanding debts which I owe at this date to be payed by what is produced on the farm or ranch:   Chas. Johnson $100.00.   Burns Bank $400.00.

''[Signed]   S. F. Jenkins,
''Jay Jenkins.''

At the time of the execution of the bill of sale and deed mentioned, plaintiff had written to an attorney for advice. Both parties went to Burns, where plaintiff informed the attorney in substance as indicated in the preliminary agreement, and the bill of sale and deed were prepared and executed. Plaintiff testifies that, at the time the matter was stated to the attorney, the latter said "that we would have a warranty deed drawn up, and went to work and drawn up the warranty deed, and he wanted to know what the consideration was, and I asked him if we had to have all the agreement stated in the warranty deed, and he said no, he said as soon as we had a consideration why it was all that was necessary." Plaintiff claims that the only consideration was that he and his wife should move to defendant's ranch. He says, "I came to Oregon positively on the proposition that my brother made to me, that he would give me a one-half interest in his ranch if I would move out," and asserts that that was the only consideration moving from plaintiff at that time. Defendant testifies that the arrangement was that plaintiff and his wife should stay at the ranch and help cultivate and improve the same for at least five years, after which time, if they so desired, they would sell everything and divide equally; that he signed the preliminary agreement to keep peace in the family; that he had never executed a deed before the one in question; that he supposed he was signing a bill of sale. The land is alleged to be of the value of $4,000, and the personal property of the value of $1,200.

MODIFIED: REHEARING DENIED.

For appellant there was a brief, with oral arguments by *Messrs. Miller & Chezem.*

For respondent there was a brief over the names of *Mr. Gustav A. Rembold* and *Mr. Robert J. Slater,* with an oral argument by *Mr. Slater.*

MR. JUSTICE BEAN delivered the opinion of the court.

No articles of partnership were executed. At the time of the execution of the instrument in question, plaintiff and defendant were so brotherly that it seemed that there was no necessity for any written agreement in regard thereto. Until after the etiquette of Chicago did not compare favorably with that of the backwoods Oregon ranch, plaintiff would have given defendant his money if he had needed it, and defendant would have conveyed to plaintiff title to all his land, if some excuse therefor had been shown. In short, the whole transaction was a family affair. Much of the evidence relates to the cause and details of the estrangement between the brothers. Both look through differently colored glasses from formerly. This evidence may be eliminated with a wish that their mental wounds will soon heal.

1. The real question for determination is: Was the property conveyed to plaintiff as a gift, or was it the understanding that he and his wife should live with defendant and cultivate and improve the farm for five years, and then have such share? If the latter, then plaintiff failed to comply with the terms of the arrangement, and it would be inequitable and unfair to defendant to sustain the conveyances. No actual fraud in the deal is imputed to plaintiff. These family contracts stand in a class of their own.

2, 3. A gift obtained by any person standing in a confidential relation to the donor is *prima facie* void, and the burden is thrown upon the donee to establish to the satisfaction of the court that it was the free, voluntary, unbiased act of the donor. A court of

66 Or.—2

equity, on the grounds of public policy, watches such transactions with a jealous scrutiny, and to set them aside it is not necessary to aver or prove actual fraud, or that there was such a degree of infirmity or im-becility of mind in the donor as amounts to legal in-capacity to make a will or execute a valid deed or contract: *Todd* v. *Grove,* 33 Md. 188.

4. The relation of the parties at the time of the alleged gift was as follows: Defendant, Samuel F. Jenkins, had been less accustomed to transact business than Jay, his brother. Each had implicit confidence in the other. In this magnanimous gift arrangement, no unfair advantage should be gained by either. When they could not run the sawmill and agree, it was shut down, and soon after plaintiff went to work elsewhere. All the circumstances indicate that defendant thought that if the deal "fell through" the deed and bill of sale would be of no effect. Plaintiff entertained the idea that as soon as the conveyances were executed he was the absolute owner of one-half of the property, and so claims the same.

In *Rhodes* v. *Bates,* 1 Ch. App. 256, a case between two brothers, Sir G. J. TURNER, L. J., said:

"I take it to be a well-established principle of this court that persons standing in a confidential relation towards others cannot entitle themselves to hold benefits which those others may have conferred upon them, unless they can shew to the satisfaction of the court that the persons by whom the benefits have been conferred had competent and independent advice in conferring them. This, in my opinion, is a settled general principle of the court, and I do not think that either the age or capacity of the person conferring the benefit, or the nature of the benefit conferred, affects this principle. Age and capacity are considerations which may be of great importance in cases in which the principle does not apply; but I think they are but of little,

if any, importance in cases to which the principle is applicable. They may afford a sufficient protection in ordinary cases, but they can afford but little protection in cases of influence founded upon confidence.''

In Story's Equity Jurisprudence (13 ed.), Section 307 et seq., there is found a very complete statement of the law applicable to this case. According to Section 307, in cases of constructive frauds, which arise from some peculiar, confidential, or fiduciary relation between the parties, there is often to be found some intermixture of deceit, imposition, over-reaching, unconscionable advantage, or other mark of direct and positive fraud. But the principle on which courts of equity act in regard thereto stands independent of any such ingredients, upon a motive of general public policy; and it is designed in some degree as a protection to the parties against the effects of overweening confidence and self-delusion, and the infirmities of hasty and precipitate judgment. These courts will therefore often interfere in such cases, where but for such peculiar relation they would either abstain wholly from granting relief or would grant it in a very modified and abstemious manner: See, also, *Osmond* v. *Fitzroy,* P. Wms. 129.

The relation of the parties at the time the instruments in question were executed was such as to compel the plaintiff to make a full discovery of the purport of the conveyances to his brother and partner, or abstain from gaining any selfish benefit in the transaction. It appears that plaintiff suggested and wrote the preliminary contract, and gave the attorney the information in regard to drawing the other documents. It is not to be presumed that defendant at his age and in his station of life, freely, voluntarily and advisedly gave away and conveyed one-half of his home, and one-half of all the other means by which he could ob-

tain subsistence during his old age, without expecting anything in return. The deal amounted to a constructive fraud upon the defendant, which vitiates the contract: *Kroll* v. *Coach,* 45 Or. 495 (78 Pac. 397, 80 Pac. 900). There are no intervening rights and the proper relief can be granted: *Parrish* v. *Parrish,* 33 Or. 486 (54 Pac. 352); *Finlayson* v. *Finlayson,* 17 Or. 347 (21 Pac. 57, 11 Am. St. Rep. 836, 3 L. R. A. 801).

5. The deed and bill of sale should be annulled and canceled of record. The property therein described should not be considered in settlement, except as to the increase thereof, leaving as partnership property one portable sawmill with all the equipments thereto belonging, and the crop raised upon the land during the year 1911. Since the fall of 1911 plaintiff has contributed little or nothing to aid in the cultivation of the farm, and he should not share in the crops raised since that time. We believe that the partnership agreement was to extend only to the carrying on or cultivation of the farm and the running of the sawmill, until at least the end of the five years from the making of the contract, and the decree of the lower court should be modified accordingly.

The learned circuit judge who tried the cause, very carefully, and with much minuteness considered all the details pertaining to the amounts paid by the different parties and the amounts due to and from each of them in connection with the partnership, and the findings in regard thereto are approved.

With the modification above mentioned, the decree of the lower court is affirmed; neither party to recover costs in this court.     MODIFIED: REHEARING DENIED.