Argued October 8, affirmed November 6, 1975

PENN ET AL, *Appellants, v.* BARRETT,
*Respondent.*
541 P2d 1282

*Frank E. Bocci,* P.C., Eugene, argued the cause and filed the brief for appellants.

*Max S. Taggart, II,* of Sanders, Lively & Wiswall, Springfield, argued the cause and filed the brief for respondent.

TONGUE, J.

This is a suit for declaratory judgment brought by the personal representative of the estate of Velma O. Barrett and by her son and daughter seeking

to nullify deeds executed by the decedent conveying various parcels of real property to defendant.

Plaintiffs appeal from a decree of the trial court in favor of defendant. Plaintiffs contend that there was a confidential relationship between decedent Velma O. Barrett (also known as Velma O. Nelson) and defendant "likened to that of husband and wife," raising a presumption of undue influence. They also contend that defendant did not offer evidence sufficient to overcome that presumption and to establish that these gifts were the free and voluntary acts of the decedent and that the transactions were fair and equitable, based upon the test stated by this court in *Toomey v. Moore et ux,* 213 Or 422, 433, 325 P2d 805 (1958).

After reading the transcript of the testimony we find that the opinion of the trial court sets forth a fair summary of the more relevant facts, as follows:

"Mrs. Nelson and Mr. Barrett had known each other for many years. They began to live together in May, 1972, as if they were husband and wife. Mr. Barrett worked in Mrs. Nelson's real estate office and had few assets of his own. In December, 1972, they learned that Mrs. Nelson had terminal cancer. On June 2, 1973, they entered into a purported contract of marriage in Reno, Nevada, which they later learned was three days before the expiration of the statutory 60 day waiting period after Mr. Barrett's divorce from his previous wife. Mrs. Nelson went to the University of Oregon Medical School Hospital in Portland on August 9, 1973, and stayed there, except for a few days visit away, until September 5, 1973, when she returned to her McKenzie River home to await her death on September 18, 1973. Mrs. Nelson received regular doses of morphine in the hospital and was in great pain. She continued to transact real estate business in the hospital, was alert, and had fre-

quent conversations with friends. There is no claim of mental incompetency in this case.

"On August '9, 1973, Mrs. Nelson executed a deed creating a tenancy by the entireties to herself named as 'Velma O. Barrett' and Mr. Barrett. On August 27, 1973, she executed three more deeds to Mr. Barrett alone. All four deeds were notarized in Lane County. The evidence shows that Mrs. Nelson did not personally sign before the notary and the notarial certificate is false, although the notary was a long-time employee of Mrs. Nelson and knew her signature.

"Mr. Barrett testified that Mrs. Nelson handed him the deed by the entireties in the hospital. He further testified that he found the three other deeds at his office desk. He says he told her that he did not want the deeds but she insisted. Royal Bud Wymer, Norma Spaulding, Spike Spaulding, and Gary Waterhouse all testified that they heard Mrs. Nelson say at various times in 1973 that she loved Don Barrett and wanted to give her property to him.

"* * * * *

"* * * There was a close relationship of love between Mrs. Nelson and Mr. Barrett, and the testimony of four independent witnesses to her stated desire to give him her property is persuasive that she was making her own decision. * * *"

■ This court, in *In re Reddaway's Estate,* 214 Or 410, 419-20, 329 P2d 886 (1958), held that:

"Definitions of undue influence couched in terms of the testator's freedom of will are subject to criticism in that they invite us to think in terms of coercion and duress, when the emphasis should be on the unfairness of the advantage which is reaped as the result of wrongful conduct. 'Undue influence does not negative consent by the donor. Equity acts because there is want of conscience on

the part of the donee, not want of consent on the part of the donor.' 3 Modern L Rev 97, 100 (1939). Said in another way, undue influence has a closer kinship to fraud than to duress. It has been characterized as 'a species of fraud.'

"* * * This court has held that where a confidential relation exists between a testator and the beneficiary, slight evidence is sufficient to establish undue influence. In re Estate of Elise Rosenberg, 196 Or 219, 246 P2d 858. The rule is more specifically stated in In re Southman's Estate, 178 Or 462, 482, 168 P2d 572 (1946), as follows:

" 'The existence of a confidential relationship * * * when taken in connection with other suspicious circumstances may justify a suspicion of undue influence so as to require the beneficiary to go forward with the proof and present evidence sufficient to overcome the adverse inference. * * *'

"It will be noted that the burden does not exist unless there are circumstances in addition to the confidential relation. * * *"

In *Reddaway* the Oregon Supreme Court listed and discussed the various "factors of importance" to be considered in determining whether undue influence was exercised.

There were circumstances in this case which justified a "suspicion" of undue influence. In considering the various "factors of importance," as listed and discussed in *Reddaway,* for the purpose of determining whether undue influence was exercised in this case, we shall assume, without deciding, that the relationship between decedent and defendant was a "confidential relationship" of such a nature, when considered with such "suspicious circumstances," as to give rise to an inference of undue influence and require defendant to offer sufficient evidence to overcome that inference.

1. *"Procurement," i.e., participation in arrangements for or in the execution of the deeds.*

"Procurement" is the first "factor of importance" listed in *Reddaway* (at 421). Under the evidence in this case it appears that there was no "procurement." The deeds in question were apparently executed by decedent while she was in the hospital. Although defendant took decedent to the hospital and was with her a great deal while she was in the hospital, there is no evidence that he had anything to do with making arrangements for or was present at their execution. Cf. *Carlton v. Wolf*, 21 Or App 476, 535 P2d 119 (1975).

2. *Independent advice.*

██ Lack of independent advice is another "factor of importance" listed in *Reddaway* (at 422). This factor is of particular importance when the donee or beneficiary is the donor's attorney.[1] When, however, as in this case, the donee or beneficiary is a lay person, even though in a confidential relationship with the donor, independent advice is not indispensible, although lack of independent advice is a "suspicious circumstance."[2] In *Atkeson v. Holly*, 258 Or 276, 281, 482 P2d 737 (1971), we considered the validity of a deed of a farm to a friend who had taken care of the decedent while in poor health and said:

> "We think it is unrealistic to expect ordinary lay people, such as the Hollys, to insist that a donor, such as Anthony, seek independent advice before deeding this property to them. Independent advice is not an absolute condition precedent to a valid gift between ordinary people."

[1] See *Toomey v. Moore et ux*, 213 Or 422, 431-32, 325 P2d 805 (1958); *In re Lobb's Will*, 177 Or 162, 188, 160 P2d 295 (1945). But see *In re Brown's Estate*, 165 Or 575, 586, 108 P2d 775 (1941).

[2] See, e.g., *Ramstead v. Bridges*, 175 Or 182, 190, 152 P2d 306 (1944); *In re Rupert's Estate*, 152 Or 649, 54 P2d 274 (1936).

In *Atkeson* no confidential relationship was involved. Nevertheless, and assuming that a confidential relationship existed here and that the lack of independent advice was a "suspicious circumstance," we do not think that it was of controlling significance under the facts of this case.

### 3. *Secrecy and haste.*

This is a third "factor of importance" listed in *Reddaway* (at 423). The deeds in question were executed by decedent while in the hospital with terminal cancer. No witness was produced who was present when they were signed or who was able to explain who prepared the deeds or what instructions were given by the decedent for their preparation.

On the other hand, under the evidence in this case it appears that defendant did not participate in any attempt to keep the deeds a "secret," much less in any "hasty" arrangements for their preparation or execution. Indeed, there was considerable evidence that decedent's intention to give the property to defendant was not a secret, but that she had told friends and business associates of her plans to do so.

### 4. *Change in decedent's attitude toward others.*

This is the fourth "factor of importance" listed in *Reddaway* (at 423). Again, under the evidence in this case, it appears that there was no change in the decedent's attitude toward her son and daughter. It also appears that defendant's conduct was not responsible for any such change in attitude. (Cf. *Carlton v. Wolf, supra* at 1847).

### 5. *Change in decedent's plan of disposing of her property.*

This is the fifth "factor of importance" listed in *Reddaway* (at 423-24). In this case there was sub-

stantial testimony by independent witnesses that decedent had previously planned to leave all of her property to defendant. This is not inconsistent with the testimony of decedent's daughter, who testified that her mother discussed leaving various items of furniture and other personal items to children and grandchildren, but did not discuss with her daughter the disposition of her other property, including her house and other real property.

6. *Unnatural and unjust gift.*

■ As stated in *Reddaway* (at 424-25) in listing this as a "factor of importance":

"A person may make a legally effective disposition of his estate which reasonable men would regard as unfair. He may favor his mistress over his wife, or he may disinherit a deserving son, and the law will not concern itself with his moral duty. *In re Estate of Riggs,* 120 Or 38, 241 P 70, 250 P 753 (1926). But if he does make an unfair or unnatural disposition it is a circumstance to be weighed in determining whether improper influence had been used. * * *"

In determining the weight to be given this circumstance in this case, including the question of the "fairness" of these gifts, we must consider the undisputed testimony of independent witnesses to the effect that defendant had been "good" to the decedent during the months of her terminal illness; that she was in love with him and happy while living with him; that she told close friends that her daughter was married and her son was able to take care of himself, and that because defendant had been good to her during her illness and because she had been happy with him she wanted him to have "everything." Under this testimony, although we recognize the circumstances as

"factors" to be considered, we cannot say that these gifts were "unnatural," "unjust" or "unfair."[9]

7. *Donor's susceptibility to influence.*

This is the last "factor of importance" listed in *Reddaway* (at 426-27) referring more specifically to "the physical and mental condition of the donor." No contention is made that decedent was incompetent. There was testimony that while in the hospital she was given "shots" of pain-killing drugs. There is no evidence, however, that such drugs made her "susceptible to influence." On the contrary, two independent witnesses who were her close friends and visited her at the hospital testified that although she was "in pain" and sometimes appeared to be "a little tired," she was mentally "alert" and "knew what she was doing." Decedent's physical condition was such as to make her more susceptible to undue influence. As such, it is a "factor of importance." We do not be-

---

[9] Cf. *Schwartz v. Garrett,* 162 Or 207, 209-10, 91 P2d 535 (1939), involving somewhat different facts, in which we said:

" '* * * [T]he weight of evidence is to the effect that he knew what he wanted to do when he made the deed. Mere opportunity for influence or suspicion of influence is not enough to set aside a deed. The court might feel that he should have provided for his sister before being generous with the Garretts, but Schwartz had a perfect legal right to dispose of his property in any manner he saw fit. The only question with which we are concerned is that of whether the defendants used undue influence on Schwartz and overcame his judgment. The court is of the opinion that the plaintiffs have failed to establish that the defendants used undue influence on Schwartz at any time to bring about the execution of the deed. Even if it may be assumed that the burden was on the defendants to establish the legality of the transaction, the court feels that the defendants have established by a preponderance of the evidence the legality of the transaction. * * *

" 'It is a natural human instinct to reward friendship and acts of kindness and the court is of the opinion that Schwartz was prompted by that motive when he made this deed and that he acted freely and voluntarily. * * *' "

See also *Grattan v. Bayley,* 271 Or 616, 533 P2d 349 (1975).

lieve, however, that it was a controlling factor under the testimony in this case.

As in *Reddaway,* there was also some other evidence which was relevant to the issue. of "undue influence," including evidence of some other possible "suspicious circumstances." But there was also other evidence supporting the finding and conclusion of the trial court that no "undue influence" was brought to bear by defendant upon decedent.

■ This is a close case. After considering all of the testimony, however, including all of the "factors of importance" listed in *Reddaway,* and after according to the trial judge the benefit of his better opportunity to observe and evaluate. the credibility of the varous witnesses as they testified, including the defendant himself, we agree with the findings and conclusions of the trial judge.

For these reasons, the decree of the trial court is affirmed.