# OSTERBERG, *Respondent,*
## *v.*
# OSTERBERG et al, *Appellants.*
## (No. 410-459, SC 24508)

563 P2d 696

Darrell E. Bewley, Portland, argued the cause for appellants. With him on the brief were Francis F. Yunker and James C. Niedermeyer, Portland.

Gerald R. Pullen, Portland, argued the cause and filed the brief for respondent.

Before Denecke, Chief Justice, and Tongue, Linde and O'Connell, Justices.

PER CURIAM.

**PER CURIAM.**

This is a suit to establish a constructive trust in certain real property which was conveyed by plaintiff to defendants. Defendant Melba Osterberg agreed to reconvey the property upon plaintiff's request.[1] Defendants appeal from a decree granting plaintiff's prayer for relief.

We affirm. The evidence supports plaintiff's contention that a constructive trust should be imposed upon defendants. All of the evidence in this case is analyzed in a well written opinion by the trial judge, which follows and which we adopt.

"Plaintiff has sued his ex-wife and three adult sons to establish plaintiff's ownership of certain real property described in his complaint. He alleges that when he executed a deed of the property to the defendants on April 11, 1972, he was induced to do so by defendant Melba; that it was without consideration; that she promised at the time of the deed to return the property to him upon demand, and has refused to do so. Defendants deny the plaintiff's claim, allege that the conveyance was an irrevocable gift and that plaintiff is estopped from asserting that the property was not a gift. Plaintiff denies the affirmative defenses.

"There was no timely request for special findings. None will be made. However, the court will, in this decision, discuss what facts appear to be established by the evidence, taking into consideration all of the tes-

---

[1] Restatement of Restitution § 182 (1937):

"Where the owner of an interest in land transfers it inter vivos to another upon an oral trust in favor of the transferor or upon an oral agreement to reconvey the land to the transferor, and the trust or agreement is unenforceable because of the Statute of Frauds, and the transferee refuses to perform the trust or agreement, he holds the interest upon a constructive trust for the transferor, if

"(a) the transfer was procured by fraud, misrepresentation, duress, undue influence or mistake of such a character that the transfer is entitled to restitution, or

"(b) the transferee at the time of the transfer was in a confidential relation to the transferor, or

"(c) the transfer was made as security for an indebtedness of the transferor."

timony and exhibits, with particular attention to the demeanor of plaintiff and Melba as witnesses.

"Plaintiff and Melba were divorced in this county by decree dated March 19, 1971 in a proceeding in which Melba was awarded all of the real property of the parties, other than that with which we are concerned in this case.

"For many years prior to the divorce, plaintiff was a heavy drinker, if not, indeed, an alcoholic. In February of 1972 Melba and 'another friend' took plaintiff to Dammasch Hospital for in-patient treatment for alcoholism.

"In August of 1971 Melba, plaintiff's sister and the sister's husband, had a conversation at Melba's kitchen table in which Melba told Mr. and Mrs. Butler that she, Melba, was afraid for plaintiff and that something would happen to cause him to lose this property and that she would like for him to turn the property over to her to protect his interest until he was well. While plaintiff was in Dammasch, Melba again informed plaintiff's sister, Mrs. Butler, that Melba was worried about plaintiff's condition, the possible loss of the property and that she wanted plaintiff to turn over the property to her, Melba, and wanted to take care of him so he would have a place to live for the rest of his life.

"On or about March 10, 1972 plaintiff was involved in an automobile accident for which he had no insurance.

"It is not clear from the evidence whether plaintiff's stay in Dammasch was interrupted by the automobile accident, or if he actually went to Dammasch after the automobile accident.

"In any event, some two or three days after he left Dammasch, plaintiff came to Melba's home (the former family home awarded to her in the divorce proceedings) and there stayed until the day of execution of the deed in question. During that time he was drinking, but according to Melba, not 'stinking drunk.' Melba, at one point in her testimony, denied there was any discussion concerning the possible effect of liability arising out of the automobile accident concerning the property in question.

"On approximately April 8, 1972 plaintiff signed the document received in evidence as Plaintiff's Exhibit No. 5. This document was prepared by Melba and signed by

plaintiff, although plaintiff denied any recollection of ever having seen this document at the time it was executed. The document had no legal effect, but purported to be a transfer of the property from plaintiff to defendants, in effect reserving a life estate in plaintiff and requiring him to pay the taxes and adequately insure the property.

"Melba contends that on April 11, 1972 plaintiff showed to her the deed received in evidence as Plaintiff's Exhibit No. 1 and that she had never seen the deed before. She testified that plaintiff insisted on going to a bank branch office and there having the deed notarized. Melba caused it to be recorded forthwith.

"Plaintiff, on the other hand, denied having ever seen the deed until Melba produced it on April 11, 1972 and contends that Melba suggested he put the property in her name and the names of the children because of his condition. He contends that Melba suggested that plaintiff trust her. He contends that he suggested that he deed the property to his sister, Mrs. Butler, but that Melba told him this was not necessary and that he would get the property back when the automobile case was cleared up.

"The evidence is undisputed that there was no consideration for the deed, although Melba's story that plaintiff produced the deed himself would indicate that he had some sort of advice in the preparation of the deed. At the time of the alleged preparation of the deed, plaintiff was represented in his legal affairs by attorneys Charles Guinasso and John Ryan. The only direct evidence as to whether plaintiff had independent legal advice was that of Charles Guinasso who testified that the plaintiff did not consult him and that as far as Guinasso knew, did not consult John Ryan.

"From the evidence I have drawn the conclusion of fact that Melba caused the deed to be prepared, which necessarily entails my finding that she is intentionally false in this part of her testimony and is, therefore, to be distrusted in others. This, however, does not dispose of the matter completely.

"The Supreme Court has had occasion to examine somewhat similar situations quite recently in the case of *Adamson v. Adamson* [273 Or 382, 541 P2d 460 (1975)],

[ 281 ]

hereinafter called *Adamson,* and in *Penn v. Barrett* [273 Or 471, 541 P2d 1282 (1975)], hereinafter *Penn.*

"In *Adamson,* the court quoted with approval from *Ingersoll v. Ingersoll,* 263 Or 376 [502 P2d 598 (1972)], as follows:

" ' ' "* * *A confidential relationship exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind." '

" '* * * *.

" ' "* * * If one person is in a confidential, but not in a fuduciary relation to another, a transaction between them will not be set aside at the instance of one of them unless in fact he placed confidence in the other and the other, by fraud or undue influence *or otherwise abused the confidence placed in him."* '

" '* * * *.

" ' "* * * The burden of showing an abuse of a confidential relation is upon the person seeking to set aside the transaction." ' (Emphasis added) [273 Or at 391.]

"Likewise, the oft-cited case of *Hanscom v. Irwin,* 186 Or 541, 565, teaches us as follows:

" ' "* * * Such a confidential relation exists not only where there is a fiduciary relation such as exists between attorney and client, trustee and beneficiary, guardian and ward, and the like, but also where, because of family relationship *or otherwise,* the transferor is in fact accustomed to be guided by the judgment of the transferee *or is justified in placing confidence in the belief that the transferee will act in the interest of the transferor * * *"* ' (Emphasis added)

"I conclude there was a confidential relationship between plaintiff, on the one hand, and Melba, on the other, although they were no longer married.

"In determining plaintiff's intention in executing the deed on April 11, 1972 we must be guided in the light of circumstances existing at the time the contract was executed. *Adamson* [273 Or at 386.]

"In *Adamson,* our court also noted that:

" 'Where only interested witnesses are called to

testify, where the testimony is conflicting and the evidence is in equipoise, the credibility of witnesses is decisive * * *.' [273 Or at 389.]

I have found that the evidence is not in equipoise by reason of my determination concerning the credibility of the witnesses.

"*Penn* teaches us that certain factors are to be considered in determining whether the conveyance was that of the free will of the grantor in situations involving claims of undue influence. From what I have previously decided and noted above, this is probably not important because I have found that plaintiff conveyed this property to Melba and the other defendants, not as a gift, but simply to hold for him until he was out of trouble, at which time Melba had agreed she would cause a reconveyance to take place. However, the factors considered in *Penn,* when applied to this case, would probably be sufficient to establish that there was undue influence exercised by Melba, who was in a confidential relationship with plaintiff. *Penn* refers to these as 'suspicious circumstances.' [273 Or at 475.]

"1. Procurement. Here there was procurement. Melba caused the deed to be prepared.

"2. Independent Advice. Plaintiff did not have independent advice although he customarily dealt with certain attorneys and at the very time in question was being represented by Mr. Guinasso with respect to the criminal charges arising out of the automobile accident.

"3. Secrecy and Haste. Haste is already apparent from the evidence although it does not appear that secrecy was a factor.

"4. Change in the decedent's (grantor's in this case) attitude toward others does not appear to be in point here.

"5. Change in the decedent's (grantor's in this case) plan of disposing of the property. This is not in point here.

"6. Unnatural and unjust gift. As a gift it was not unnatural and unjust insofar as it being a gift to the defendant children in this case. However, it was certainly unnatural, at least, if not unjust, as an outright gift to plaintiff's ex-wife and it was unnatural in the sense that

it constituted a gift of the only important economic asset plaintiff had.

"7. Donor's susceptibility to influence. Here plaintiff was not incompetent, but in all the circumstances he certainly was susceptible to the influence of Melba.

"From the time of the alleged outright gift until the time of trial, plaintiff lived on the property, improved the property and except for one year, paid the property taxes.

"I have concluded that the ownership of this property rightfully belongs in the plaintiff, free and clear of any claim whatsoever on the part of defendants, except that to do equity, plaintiff should be required to reimburse his son, the defendant David Osterberg, for the sum of $100 advanced by David for the payment of real property taxes.

"Plaintiff's counsel shall forthwith prepare a form of decree with general findings in favor of plaintiff, requiring defendants to execute all necessary instruments to transfer title to the plaintiff, or upon their failure to do so, that the decree of the court shall effect the transfer of title.

"* * * * *."

■ Defendants argue on appeal that plaintiff does not come into equity with clean hands, because there was evidence that plaintiff made the conveyance to defraud creditors, specifically to avoid a possible claim as a result of an automobile accident that occurred just before the conveyance and for which plaintiff appeared to be at fault.[2]

The idea of conveying the property to avoid the possible claims arising out of the accident was originated by defendant Melba Osterberg and in a manner which suggests that defendant Melba was motivated no so much by a desire to protect plaintiff, but as a part of her scheme to get control of plaintiff's property.[3]

---

[2] Plaintiff paid the damages, which amounted to $201.15.

[3] Plaintiff testified that Melba also gave as reasons for conveying the property to her: "because of my alcoholic habits, and possibility that I would not survive the next day, or something to that effect."

The rule denying relief to a plaintiff seeking recovery of property conveyed for an illegal purpose has been subject to attack.[4]

The unfairness of the operation of the rule which results in a windfall to the transferee is ameliorated by various exceptions, at least one of which is applicable to the present case. It is well established that the plaintiff can recover property transferred for an illegal purpose when the transferee is more at fault than the plaintiff transferor. Such is the situation in the present case. The evidence convinces us that the idea of conveying the property to defeat possible creditors originated with defendant Melba Osterberg, and that it was she who induced plaintiff to make the conveyance for that purpose.

■ Finally, defendants argue that the complaint failed to state a cause of suit against defendants John, Paul and David Osterberg, plaintiff's children, because the elements of a constructive trust were neither pleaded nor proved. The complaint alleges that defendant Melba Osterberg induced plaintiff to transfer the property and promised to return the property upon demand by plaintiff. It is alleged that the transfer was without consideration. It was not necessary for the imposition of a constructive trust upon plaintiff's children to prove that the conveyance to them was induced by their promise. The rule is stated in Restatement of Restitution § 167 (1937):

> "Where the owner of property transfers it to another, being induced by fraud, duress or undue influence of a third person, the transferee holds the property upon a constructive trust for the transferor, unless before notice of the fraud, duress or undue influence the transferee has given or promised to give value."[5]

---

[4] V Scott on Trusts § 422 (3d ed 1967).

[5] Restatement of Restitution, Explanatory Note § 167, comment b at 679 (1937) explains the rule as follows:

> "b. *Gratuitous transfer.* Where the owner of property gratuitously transfers it to another, the transfer being induced by the fraud of a

■ As we have already made clear, the intention to make a gift was negated, and no value was given by any of the transferees. Since it was proved that the transfer was the result of Melba Osterberg's undue influence, it follows that the imposition of a constructive trust was appropriate.

Decree affirmed.

---

third person, the transferee would be unjustly enriched if he were permitted to retain the property, and can therefore be charged as constructive trustee of it for the transferor. This is true even though the transferee had no notice of the fraud of the third person. This situation is in substance the same as though the third person had by fraud obtained a transfer of the property and had subsequently transferred it gratuitously to another. It is immaterial whether the transfer is made by the defrauded owner directly to such other or is made to the fraudulent person and is subsequently transferred by him.

"The result is the same where the transfer is induced by the duress or undue influence of a third person."

*See also* Restatement of Restitution § 70 (1937); Restatement of Contracts § § 477, 496, 497 (1932), and cases cited in Reporter's Notes for Restatement of Restitution § 167 (1937).