Argued and submitted June 26, affirmed in part; reversed in part; and remanded
for further proceedings October 5, 1981

# ALBRIGHT,
## *Respondent - Cross-Appellant,*

*v.*

# MEDOFF et al,
## *Appellants - Cross-Respondents.*
## (No. A7902-00826 CA 19189)

634 P2d 479

Warde H. Erwin, Portland, argued the cause for appellants - cross-respondents. With him on the briefs was Wm. W. McGeorge, Portland.

Paul H. Gunderson, Beaverton, argued the cause and filed the brief for respondent - cross-appellant.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

The estate of Edward Albright brought this suit to set aside a transfer of real property, alleging that the decedent was mentally incompetent at the time of transfer and that the transfer was obtained by undue influence. The trial court set aside the transfer. Defendants appeal, and plaintiff cross-appeals. We review *de novo* and affirm in part, reverse in part, and remand for further proceedings.

The issues are: (1) whether the defendant Carla Eltzroth enjoyed a "confidential relationship" with her uncle, Edward Albright; (2) whether defendants have the burden of disproving that the subject property was procured by the exercise of undue influence; (3) whether plaintiff is entitled to costs and disbursements; and (4) whether the trial court should have addressed the issue of the rentals received by defendants on the disputed property.

In 1972, Edward Albright executed a will naming his brother Louis Albright the sole beneficiary, if he survived decedent, and his niece Carla Eltzroth as the sole beneficiary, if he did not. Edward, Louis and Carla at all times prior to Edward's death believed that will was valid. The parties to this suit now agree the will was invalid.

By the mid-1970's Edward became increasingly careless about his business affairs, leading to his adding Carla as an authorized signatory on his bank account. Without going into a lengthy recitation of the evidence, we are satisfied that Carla developed a confidential relationship with her uncle Edward.

In January, 1978, while Edward was hospitalized, Carla found him an apartment because of the uninhabitability of Edward's home and his deteriorating health. Beginning in February, 1978, Carla discussed with Edward the necessity of selling his home to meet his living expenses. Carla felt $5,000 was a fair price for the home in its deteriorated condition.

Carla advised Louis that the home was going to be sold and that he could buy it for $5,000. He declined to do so, perhaps because he expected to inherit the property under Edward's will. Carla also advised one of

Edward's sisters, who was in the real estate business with her husband, that defendants were going to buy the home for $5,000. She suggested Carla get the property appraised. Carla declined on the ground that it would be too expensive.

On April 24, 1978, while in the hospital, Edward signed an "earnest money agreement," written in longhand by Carla, to sell her the property for $5,000. Carla then had her attorney prepare a deed for the property to defendants. Prior to signing the deed and, while still in the hospital, Edward discussed whether he should sell the property with the hospital chaplain, who advised him not to sell. The record is silent on why Edward disregarded this advice. On May 2, 1978, while he was still in the hospital but after he had been released to return to his apartment, he executed the deed before a notary public. No particular haste characterized the transaction, and Edward was mentally competent at the time he signed the deed. When the deed was executed, the property was worth about $12,500.[1]

■■ Carla attended to Edward's many needs. He relied on her advice and took her word on business matters without question. She had a confidential relationship with him. Plaintiff had the burden of proof in contesting a transfer on grounds of undue influence. However, where a confidential relationship and suspicious circumstances exist, the beneficiary of the disputed transfer must overcome the inference of undue influence. *In re Reddaway's Estate,* 214 Or 410, 329 P2d 886 (1958); *In re Estate of Manillus Day,* 198 Or 518, 257 P2d 609 (1953); *In re Estate of Elise Rosenberg,* 196 Or 219, 246 P2d 858 (1952); *In re Southman's Estate,* 178 Or 462, 168 P2d 572 (1946).[2] Suspicious circumstances exist in this case.

---

[1] The trial court's characterization of the effect of the difference between the sale price of $5,000 and the property's actual value of $12,500 as an *unintended* gift of $7,500 seems erroneous; an essential element of a gift is that the donor intend that the transferred property be a gift. *Johnson v. Steen,* 281 Or 361, 369, 575 P2d 141 (1978).

[2] Although issues of undue influence usually arise in cases involving wills, the legal principles established in will cases apply with equal force to cases of *inter vivos* transfers. *See Penn v. Barrett,* 273 Or 471, 541 P2d 1282 (1975).

■ A variety of factors may be examined to determine whether undue influence has been exercised in a given case by a person enjoying a confidential relationship with a donor. *Penn v. Barrett,* 273 Or 471, 541 P2d 1282 (1975); *In re Reddaway's Estate, supra.* The first is procurement or participation in preparation of a deed. Here, Carla, acting as agent for defendants, asked her attorney to prepare the deed. She then took the deed to the hospital to obtain decedent's signature. Carla knew the deed would be to her advantage, for unless her uncle Louis predeceased her, she would not receive the property under Edward's will.

A second factor is independent advice. A beneficiary who occupies a confidential relationship with the grantor and participates in the preparation of a document has a duty to see that the grantor receives independent advice. *Troyer v. Plackett,* 48 Or App 497, 500, 617 P2d 305 (1980). Carla failed to insure that the decedent obtained independent advice. Failure to secure independent advice may by itself constitute sufficient grounds to set aside a transfer. *Gilliam v. Schoen,* 176 Or 356, 364, 157 P2d 682 (1945).

A third factor is secrecy and haste. Carla did inform the family that she intended to purchase the property. The trial court found, and we agree, that the transfer was not characterized by secrecy or undue haste. A fourth factor is change in attitude toward others. Edward and Louis enjoyed a close relationship throughout their lives. Louis had cared for Edward for several years preceding the time Carla started managing the decedent's affairs. The decedent's attitude shifted significantly away from his brother and toward his niece in the mid-1970s. This is some evidence of undue influence.

A fifth factor is the change in decedent's plan of disposing of his property. Louis was the primary beneficiary under Edward's will. Until Edward's death, he, Carla and Louis all thought Edward's will was valid. The property transfer removed the only significant asset from Edward's estate and, consequently, constituted a significant change in his plan for disposing of his assets. A sixth factor is whether the property transfer was unnatural or unjust.

Here, the facts do not show an unnatural or unjust disposition which would necessarily suggest undue influence. A seventh factor is the donor's susceptibility to influence. Edward was in poor health and about to be discharged from the hospital for the second time within a few months. He suffered from alcoholism and was subject to periods of incoherency. The trial court found however, that Edward was not especially susceptible to influence, and we agree. Another factor to be considered is lack of adequate consideration for a property transfer. Carla rejected the suggestion that she obtain an appraisal. In *Geiger v. Palmer,* 249 Or 123, 437 P2d 750 (1968), the Supreme Court set aside a deed executed by parties in a confidential relationship for $3,750 when the fair market value of the property was found to be about $8,000. The sale price here was $5,000, when the property's actual value was at least $12,500. As in *Geiger,* disparity between the sale price and the fair market value is some evidence of undue influence.

After reviewing the record, and giving due consideration to the better opportunity of the trial judge to observe and evaluate the credibility of witnesses, we agree with the findings and conclusions of the trial court.

■ Plaintiff contends on his cross-appeal that because he has recovered possession of real property, he is entitled to recover costs and disbursements under ORS 20.020 and ORS 20.040(1). He argues that even though ORS 20.040(1) speaks of "actions," he is entitled in this suit in equity to recover costs, because the Oregon Rules of Civil Procedure (ORCP) have abolished the procedural distinctions between law and equity.

Prior to the adoption of ORCP effective January 1, 1980, the award of costs and disbursements in suits in equity was governed by ORS 20.030, which provided:

> "In a suit, costs and disbursements shall be allowed to a party in whose favor a decree is given, in like manner and amount as an action, without reference to the amount recovered or the value of the subject of the suit, unless the court otherwise directs."

Oregon Laws 1979, ch 284, § 199 repealed a number of statutes which either conflicted with ORCP or which became superflous because of ORCP. ORS 20.030 was included among the statutes repealed.

ORCP 2 provides:

"There shall be one form of action known as a civil action. All procedural distinctions between actions at law and suits in equity are hereby abolished, except for those distinctions specifically provided for by these rules, by statute, or by the Constitution of this state."

After reviewing the legislative history of ORCP 2, we conclude that the legislature repealed ORS 20.030 because it found no need for a duplicative costs statute. The intention to reduce duplication is found in Oregon Laws 1979, ch 284, § 5, which provides:

"References in the statute laws of this state, * * * to *actions,* actions at law, proceedings at law, suits, suits in equity, proceedings in equity, judgments or decrees are not intended and shall not be construed to retain procedural distinctions between actions at law and suits in equity abolished by ORCP 2." (Emphasis added.)

In explaining the purpose of section 5 the Oregon Legislative Counsel stated:

"Section 5 deals with a problem made by Rule 2. Rule 2 abolishes all procedural distinction between actions of law and suits in equity. Statutes are replete with hundreds of references, [to] actions [and] suits, suits in equity, judgments, etc. Section 5 of the bill is an effort to deal with those hundreds of statute sections preferably amending in this bill or otherwise and merely indicate that any references in the statutes at various times that would appear a distinction between law and equity are not intended and shall not be construed to retain any procedural distinction that is abolished by Rule 2." [3]

The preceding comments are directly applicable to the issue raised by plaintiff's cross-appeal. ORS 20.040 appears to distinguish between law and equity by using the term "action." However, given the legislative history of Oregon Laws 1979, ch 284, § 5, we find that ORS 20.040 applies equally to suits in equity. Thus, because plaintiff recovered

---

[3] Joint Committee on Oregon Rules of Civil Procedure, Tapes of Hearings on H.B. 3131 (Tape 4(A), Side 1, May 3, 1979; statement of Robert Lundy, attorney for Oregon Legislative Counsel).

possession of real property, under ORS 20.040(1) and ORS 20.020[4] he is entitled to costs and disbursements.[5]

Finally, the trial court ruled it did not have jurisdiction to address the issue of monthly rentals received by the defendants during the time they exercised control over the premises. The record shows that rentals were received by them. Plaintiff maintains on the cross-appeal that because its complaint contained a prayer for general equitable relief, the trial court should have addressed the rental fees issue. We agree. An equity court has broad powers to shape a decree under a prayer for general equitable relief so that it can grant full and complete relief to the parties according to the equities of the case. *Stan Wiley v. Berg,* 282 Or 9, 21, 578 P2d 384 (1978). An accounting should have been ordered as part of the total remedy consequent on restoring the real property to the plaintiff.

Affirmed in part; reversed in part; and remanded for further proceedings.

---

[4] ORS 20.020 provides:

"A party entitled to costs shall also be allowed for *[sic]* all necessary disbursements, including the fees of officers and witnesses, the necessary expenses of taking depositions, the expense of publication of the summons or notices, and the postage where the same are served by mail, the compensation of referees, and the necessary expense of copying any public record, book or document used as evidence on the trial."

[5] After January 1, 1982, the costs and disbursements issue plaintiff raises is governed by new ORCP 68, which includes a uniform provision for costs and disbursements because of the procedural merger of law and equity. ORCP 68B provides:

"In any action, costs and disbursements shall be allowed to the prevailing party, unless these rules or other rule or statute direct that in the particular case costs and disbursements shall not be allowed to the prevailing party or shall be allowed to some other party, or unless the court otherwise directs. If, under a special provision of these rules or any other rule or statute, a party has a right to recover costs, such party shall also have a right to recover disbursements."