Argued and submitted January 27, judgment modified to set aside conveyance of
October 15, 1996; otherwise affirmed December 6, 2000

Evelyn E. SMITH,
*Appellant,*

*v.*

Caryl Jayne ELLISON,
*Respondent.*

(16-98-01055; CA A105661)

15 P3d 67

G. David Jewett argued the cause for appellant. With him on the brief was Thorp, Purdy, Jewett, Urness & Wilkinson.

No appearance for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

**ARMSTRONG, J.**

Plaintiff appeals the trial court's judgment refusing to cancel two deeds by which she conveyed interests in a parcel of real property to defendant, her daughter. We review *de novo* and affirm in part and reverse in part.

■  The facts are in dispute, and we therefore state them as we find them on *de novo* review. *See Hill v. Oland*, 61 Or App 85, 87, 655 P2d 1088 (1982). Although we ordinarily defer to the trial court's determinations as to credibility, *see Rea v. Paulson*, 131 Or App 743, 745, 887 P2d 355 (1994), in this case, the trial court did not indicate which witnesses it found credible, and the phrasing of its decision on the merits suggests that it concluded that plaintiff could not prevail under either her own or defendant's version of the facts. Accordingly, where necessary, we make our own determinations as to credibility. We conclude that plaintiff's first transfer of a one-third property interest to defendant was not procured by undue influence. However, we conclude that the transfer of plaintiff's remaining two-thirds interest in the property was the product of undue influence and, accordingly, set it aside. We therefore affirm in part and reverse in part.

Before July 1995, plaintiff and her late husband lived in California. In December 1994, plaintiff was in Eugene, Oregon, visiting some of her children, including defendant. Plaintiff was 75 years old at that time. During that visit, she mentioned to defendant and another of her daughters, June, that her husband had Alzheimer's disease and Parkinson's disease and that she needed someone to help her take care of him. The two daughters suggested that plaintiff move to Oregon so that her children would be able to help her care for her husband. Plaintiff agreed and asked defendant to look for a duplex for plaintiff to purchase that would be close to a grocery store.[1]

---

[1] According to plaintiff, she wished to purchase the duplex and to rent half of it out while living in the other half with her husband. Defendant asserts, however, that it was understood that she and her family would move into half of the duplex while plaintiff and her husband would live in the other half. We need not resolve that factual dispute to decide the case.

Defendant was apparently unable to find a duplex. However, she did find a two-bedroom house that she thought would suit plaintiff's needs. Without having seen the house, plaintiff instructed defendant to buy it in plaintiff's name. Defendant bought the house as instructed. Over the Fourth of July, plaintiff and her husband moved from California to the house in Eugene. When they arrived, they discovered that defendant and five of her family members were already living in it.[2] They nonetheless moved into one of the bedrooms in the house, and the two people who had been staying in that bedroom moved out into a bus on the property.

While plaintiff lived in the house, she bought some or all of the groceries and cooked dinner for all of the residents. Defendant paid the monthly mortgage payment and half or all of the utility bills. After she had been living there for several months, plaintiff decided to move out because of disagreements with defendant and her children. Plaintiff and her husband then moved in with her daughter June and June's spouse.

After plaintiff and her husband had lived with June for a few weeks, the husband suffered a stroke and had to be hospitalized and then placed in a convalescent home. Plaintiff came down with pneumonia and began to worry about who would take care of her husband if she died. She asked defendant if she would do so, and defendant replied that she would but requested that her name be put on the deed to the Eugene house. In January 1996, plaintiff put defendant's name on the deed, giving her a one-third interest in the property. It does not appear that defendant participated in the preparation of the first deed. At the time of the conveyance, defendant agreed to pay the mortgage payments and the property taxes. She has since fallen behind on both obligations.

In September 1996, plaintiff's husband died. Shortly before plaintiff was to go to California to have a memorial

---

[2] Defendant contends that her mother asked her to move into the house in Eugene so that she would be available to help care for plaintiff's husband. She does not explain whether her mother understood that five other people would be residing in the house as well.

service for him, plaintiff signed a deed conveying her remaining two-thirds interest in the property to defendant. The parties do not dispute that defendant prepared the second deed. Defendant claims that she did so at plaintiff's direction. Plaintiff claims that defendant tricked her into signing the second deed and that she did not know what she was signing. At any rate, soon after signing the deed, plaintiff returned to California and ended up remaining there for several months before returning to Oregon.

Plaintiff alleges that she did not learn that she had conveyed her entire interest in the property to defendant until the summer of 1997, when she returned to Oregon and got into an argument with defendant regarding whether one of defendant's daughters, Carolyn, could live in the house. After that argument, which, according to plaintiff, involved physical contact with Carolyn as well as with her fiancé, plaintiff sought to have both conveyances set aside. The trial court held that plaintiff had not met her burden of proof and refused to set the conveyances aside.

Plaintiff assigns error to the trial court's refusal to cancel the deeds. She argues that the trial court failed to recognize that, because she and defendant were in a confidential relationship and because plaintiff was particularly vulnerable at the times of the conveyances, defendant had the burden of proving that she had not exerted undue influence. Defendant makes no response. Although it is a close issue, we agree with the trial court's conclusion that the first deed was a valid conveyance and was not tainted by undue influence. However, we disagree with its conclusion that the second deed was valid. We therefore affirm as to the first deed and reverse as to the second.

"Undue influence" has been defined as "unfair persuasion of a party who is under the domination of the person exercising the persuasion or who by virtue of the relation between them is justified in assuming that that person will not act in a manner inconsistent with his welfare." *Restatement (Second) of Contracts* § 177(1) (1981). *See also Egr v. Egr et al*, 170 Or 1, 7, 131 P2d 198 (1942) (quoting substantially similar passage from *Restatement of Contracts* § 497). When undue influence is exerted by one party to a contract

on the other party and that influence induces assent, the contract is voidable by the victim of the influence. *Restatement (Second) of Contracts* § 177(2). Moreover, when there is a confidential relationship between the parties, only slight evidence is necessary to establish undue influence. *Penn v. Barrett*, 273 Or 471, 475, 541 P2d 1282 (1975). Finally, when there is a confidential relationship coupled with suspicious circumstances, an inference of undue influence arises. That inference may be sufficient to establish undue influence. *Rea v. Paulson*, 131 Or App 743, 747, 887 P2d 355 (1994).

The Supreme Court has identified several "suspicious circumstances" that bear on the existence of undue influence, including: (1) whether the recipient of the gift participated in arranging or executing the deeds, (2) whether the alleged victim of the influence received independent advice, (3) whether the conveyances were conducted in secrecy and with haste, (4) whether there was a change in the donor's attitude toward others, (5) whether the conveyance deviated from the donor's previous plans for disposing of the property, (6) whether the gift is unnatural and unjust, and finally (7) whether the donor is susceptible to influence. *Penn*, 273 Or at 476-80. As the court has pointed out, the emphasis in undue influence cases should be on "the unfairness of the advantage which is reaped as a result of wrongful conduct. * * * Equity acts because there is a want of conscience on the part of the donee, not want of consent on the part of the donor." *Id.* at 474-75 (citations and internal quotation marks omitted).

In this case, we conclude that a confidential relationship existed between the parties. "A confidential relationship exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interests in mind." *Knight v. Woolley Logging Co.*, 278 Or 691, 696, 565 P2d 748 (1977) (citations and internal quotation marks omitted); *see also In re Reddaway's Estate*, 214 Or 410, 329 P2d 886 (1958) (describing a confidential relationship as a "relationship * * * such as to indicate a position of dominance by the one in whom confidence is reposed over the other") (citations and internal quotation marks omitted); *Kugel v. Pletz*, 22 Or App 248, 252-53, 538 P2d 962 (1975) ("A

confidential relationship * * * means a fiduciary relationship, either legal or technical, wherein there is a confidence reposed on one side with a resulting superiority and influence on the other.") (citations, emphasis, and internal quotation marks omitted). Although the relationship between a parent and child is often confidential, whether a confidential relationship exists in a given case is a question of fact. *Restatement (Second) of Contracts* § 177, comment a; *see also Egr*, 170 Or at 7.

The evidence establishes that defendant and plaintiff shared a joint bank account and that, although the account apparently contained plaintiff's money, both parties withdrew from it. They continued to share the joint account even after plaintiff left Oregon for California after her husband's death. Plaintiff's decision to share a bank account with defendant indicates that she reposed trust and confidence in defendant. Moreover, defendant testified repeatedly that plaintiff asked her for help in taking care of her husband because defendant was the only one of her children who was willing to help her. Plaintiff also testified that she had trust and confidence in defendant and that those sentiments continued even after plaintiff moved out of the house she had been sharing with defendant and her family. Finally, the fact that plaintiff directed defendant to search for and buy a house for her and that she approved the purchase without seeing the property indicates that plaintiff reposed trust and confidence in defendant. Based on the testimony of both parties, we are satisfied that, although their relationship may have been rocky at times, plaintiff and defendant shared a confidential relationship and that that relationship existed at the time of the disputed transactions.

We turn to whether there were suspicious circumstances surrounding each of the transactions sufficient to raise an inference of undue influence. We address the transactions in turn. The first transaction occurred after plaintiff had moved out of the house in which she lived with defendant.

Although the evidence is conflicting as to procurement, we find that defendant did not participate in the

arrangement or execution of the first deed.[3] Although the record does not suggest that plaintiff received independent advice, that circumstance has been held to be of less importance when, as here, the donee was a layperson, *see Penn*, 273 Or at 476-77, and did not assist in the preparation of the deed, *cf. Ryan v. Colombo*, 77 Or App 71, 80, 712 P2d 139 (1985). There also is no evidence that the first transaction was conducted in secrecy and with haste. It appears that after plaintiff decided to convey an interest in the house to defendant, the parties discussed various ways to do it, and plaintiff eventually arranged the transaction through the mortgage company. There is no indication that that apparently somewhat prolonged process was conducted in secrecy. There also is no evidence that plaintiff's attitude toward others changed or that the conveyance deviated from her previous plans for disposing of her property. Moreover, the gift, by which plaintiff conveyed a partial interest in real property to her daughter, does not appear to be unnatural or unjust.

Finally, it is difficult to determine how susceptible to influence plaintiff was at that time. We know that plaintiff was recovering from an illness when the transaction occurred and that her husband was in a convalescent home. Those facts increased plaintiff's vulnerability at that point and therefore weigh in favor of her susceptibility to influence. However, plaintiff also testified that she was worried about her husband but that she knew what she was doing. More over, no witness testified that plaintiff was not of sound mind or that she was particularly easily led during that period of her life, and, because plaintiff did not live with defendant during that period, this is not a case where the donee gained control over the donor and increased the donor's susceptibility simply by spending an excessive amount of time with her

---

[3] Defendant did speak to someone at a financial services company about getting a mortgage in her own name, but the conveyance was ultimately effected through another means. As to whose idea the conveyance was, defendant testified that it was plaintiff's idea, because plaintiff wanted to ensure that defendant would receive the house in the event that plaintiff and her husband both died; plaintiff testified that defendant asked for an interest in the house in exchange for defendant's promise to take care of plaintiff's husband in the event that plaintiff predeceased him. Although we do not find it necessary to resolve that conflict in the testimony in order decide the case, we note that plaintiff did give substantial gifts to her other children and to a niece, so that it would not have been out of character for her to convey to defendant an interest in the house gratuitously.

and limiting others' access to her. *See, e.g., In re Reddaway's Estate*, 214 Or at 415.

Although this is a close issue, any inference that arises from plaintiff's somewhat increased susceptibility to influence and the lack of independent advice, even when coupled with the confidential relationship between plaintiff and defendant, is rebutted on this record. No other evidence of fraudulent or suspicious conduct in relation to that transaction appears in the record.[4] Although plaintiff makes much of the fact that defendant did not care for her husband when he was in the convalescent home, that fact has no bearing because plaintiff testified that she gave defendant an interest in the house in return for defendant's promise to care for her husband *after plaintiff's death*. Similarly, we do not view the fact that defendant has fallen behind on mortgage and tax payments because of financial difficulties to indicate fraud in the first transaction, even if defendant did, as plaintiff alleges, promise to make those payments in exchange for an interest in the property. Finally, the effects of the first transaction are not troubling.[5] It gave defendant a limited interest in a house where she already lived. It did not put defendant at a significant advantage over her siblings, one of whom had been given $20,000 to buy a house and another of whom had been given a flood-damaged house outright. Because we agree with the trial court that plaintiff did not meet her burden of proof as to undue influence in the first transaction, we affirm the trial court's decision as to that deed.

We now turn to the second transaction. That transaction occurred about six weeks after the death of plaintiff's husband, just before she left Oregon to hold a memorial service for him in California. Plaintiff testified that she was "a basket case" at that time and did not know what she was signing. Beginning with the issue of procurement, the parties do not dispute that defendant prepared the deed for the transaction. However, plaintiff alleges that defendant did so

---

[1] *See, e.g., Reddaway*, 214 Or at 420 (characterizing undue influence as "a species of fraud") (internal quotation marks omitted).

[5] *See Reddaway*, 214 Or at 419 (noting that the "consequences of upholding the influenced gift are important" in determining whether the gift should be set aside because of undue influence) (citations and internal quotation marks omitted).

on her own initiative, while defendant contends that she did so at plaintiff's direction. In either case, the fact that defendant prepared the deed is some evidence of procurement.

As with the first deed, there is no evidence that plaintiff received independent advice in connection with the transaction. Although we did not consider the lack of independent advice to be significant as to the first deed, the fact that defendant prepared the second deed makes the lack of independent advice more weighty. *See, e.g., Ryan,* 77 Or App at 80. The next issue is secrecy and haste. Neither party indicated whether the transaction was kept secret from others. Whether or not the transaction was secret, however, it was certainly hasty. The deed was signed only six weeks after plaintiff's husband's death and immediately before she left the state on a prolonged trip. Additionally, plaintiff testified that she was a "basket case" because of her husband's death at the time that the second deed was signed. The fact that the transaction was conducted within weeks of the death of plaintiff's husband, while plaintiff was still grieving, is persuasive evidence of its hastiness.

It does not appear that there was a change in plaintiff's attitude toward others around the time of the second transaction nor do we know whether the transaction deviated from plaintiff's previous plans for disposal of her property. Moreover, because the gift was to plaintiff's daughter and she had given other children substantial gifts, it would be difficult to say the gift was unnatural and unjust. On the other hand, the gift was of somewhat greater magnitude than the gifts that she had given other children. Plaintiff put about $70,000 down on the house when she bought it and took out a $60,000 mortgage. At the time of trial, the house was worth about $150,000. Although the parties agreed that defendant would make the mortgage payments, plaintiff had sometimes had to do so because of defendant's financial difficulties. Plaintiff had given another daughter $20,000 for a house, and she had given a son a flood-damaged house that, she testified, was uninhabitable. There is no evidence of the worth of the flood-damaged house in the record, but plaintiff had received $110,000 from her insurance company to repair it, money that she kept when she gave the house to her son.[6] In

---

[6] Defendant testified that plaintiff said that she had given another daughter $50,000 for a house, but no other evidence of that transaction appears in the record

light of the fact that the mortgage payment on the house at issue was significantly less than its fair rental value and that plaintiff put $70,000 down on the house, we conclude that plaintiff's gift of the house to defendant was substantially larger than the gifts she had given to two other children. Thus, the gift can be reasonably viewed as somewhat unjust.

Finally, we conclude that plaintiff was at least fairly susceptible to influence at the point that the second transaction occurred. Her husband had died only six weeks before, and she was about to embark on a stressful trip to California to hold a memorial service for him. She had enjoyed a close relationship with her husband and had been with him daily throughout the period of his final illness. She testified that she was a "basket case" at the point of the second transaction. We need not credit plaintiff's testimony that she did not even know what she was signing to reach our conclusion that plaintiff was susceptible to influence at that point in her life.

With regard to the second transaction, then, we conclude that defendant has not rebutted the presumption of undue influence. A confidential relationship existed between the parties. Moreover, defendant procured the deed, plaintiff did not receive independent advice, the conveyance was conducted in haste, the gift was somewhat unjust, and plaintiff was at least fairly susceptible to influence at that point in her life. Those suspicious circumstances, coupled with the parties' confidential relationship, are sufficient to raise an inference of undue influence. That inference has not been rebutted. In fact, to the contrary, it is reinforced by the consequences of the gift, which apparently leaves plaintiff with little property to dispose of on her death or to sell, if need be, during her lifetime.[7] *See Reddaway*, 214 Or at 419; *see also Jenkins v. Jenkins*, 66 Or 12, 19-20, 132 P 542 (1913) ("It is not to be presumed that defendant at his age and in his station of life, freely, voluntarily and advisedly gave away and

and no testimony was elicited from plaintiff to that effect. Although plaintiff did not object to defendant's description of plaintiff's out-of-court statements, we note that the statements are hearsay and hence unreliable evidence. We therefore choose not to rely on them to decide this case.

[7] Plaintiff testified that she is currently living in an apartment but that she could live with her daughter June. Although plaintiff helped June buy the house she and her husband currently own, plaintiff holds no interest in that property. Her only real property appears to be a house in California. Other evidence in the record suggests that she has very little in the way of liquid assets.

conveyed one-half of his home, and one-half of all the other means by which he could obtain subsistence during his old age, without expecting anything in return."). Although there may have been actual consent on the part of plaintiff in this case, quite clearly there was also a lack of conscience on the part of defendant, who accepted a sizable gift from plaintiff at a point when she was very vulnerable, both psychologically and economically. *See Penn*, 273 Or at 474-75. Accordingly, we exercise our powers in equity to set the second conveyance aside.

Judgment modified to set aside conveyance of October 15, 1996; otherwise affirmed.